No. 88,465

STATE OF KANSAS, *Appellee,* v. RONALD L. DECKER, *Appellant.*
66 P.3d 915

Opinion filed April 18, 2003.

*Mary Curtis*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Jim A. Vanderbilt*, county attorney, argued the cause, and *Benjamin D. Sherber*, assistant county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: Ronald L. Decker appeals the jury verdict finding him guilty of first-degree murder.

Ronald, his wife, Sue Decker, and the victim, Lloyd Wayne Green, were friends. On the night Green died, the three celebrated Ronald and Sue's anniversary by having dinner in Lawrence, followed by visits to some bars, ending up at a bar called the Jet Lag. Green and Ronald drank heavily.

When it was time to leave for the Deckers' home, a trailer in McLouth, Sue and Green left Ronald behind. Ronald was angry to be left behind and eventually phoned his home and learned that Sue and Green were there. Sue and Green returned to Lawrence and picked up Ronald.

During the drive back to McLouth, the two men argued. They got out of the vehicle and started to physically fight. They fought until Sue intervened, and they then stopped. Ronald's ear was bleeding, and his arm was injured from Green stomping on it.

The trio returned to McLouth about 6 a.m., and each had another beer. Green eventually passed out on the living room floor. Sue went to the bedroom, and Ronald followed her there. Sue then told Ronald that Green had touched her inappropriately earlier in the evening and that Green had tried to take a pistol from a desk drawer. Ronald retrieved the gun from the desk, loaded it, and told Sue that he had to "put [Green] down."

Ronald then left the bedroom and went to the living room. A few minutes later, Sue heard a gunshot, went to the living room, and observed Ronald standing over Green. Green's ear had been "shot out." Sue testified that she then saw Ronald point the gun at

Green's head and shoot him. She also stated that Ronald shot Green in the chest.

Sue assisted Ronald in burying Green just outside the trailer under the stairs to a deck.

Almost 2 years after the killing, Sue informed a caseworker at a battered women's shelter that Ronald had shot Green. Eventually Green's body was found. An autopsy of Green's body found bullet fragments from a gun recovered from the Deckers' residence.

## PREMEDITATION

Ronald raises two separate challenges involving premeditation. He contends the trial court erred by giving an instruction which defined premeditation. The other challenge is to the sufficiency of the evidence as it relates to premeditation.

### (A) Instruction

The instruction Ronald complains of states, in relevant part:

"As used in these instructions, the following words and phrases are defined as indicated.
"Premeditation means to have thought over the matter beforehand."

Ronald failed to object to the instruction defining premeditation given at trial. This limits the scope of review to a clearly erroneous standard. See *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230 (2002).

K.S.A. 2002 Supp. 22-3414 (3) states in part:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

"Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]" *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

Trial courts are urged to follow suggested PIK instructions absent a case-specific need to modify. See *State v. Dias*, 263 Kan.

331, 335, 949 P.2d 1093 (1997); *State v. Wilson*, 240 Kan. 606, 609-10, 731 P.2d 306 (1987).

The definition of premeditation used here has been approved by this court in *State v. Saleem*, 267 Kan. 100, 105, 977 P.2d 921 (1999), although in a concurring opinion, Justice Allegrucci disagreed with the definition (267 Kan. at 115).

We find that the instruction, given the record before us, was not clearly erroneous.

### (B) Sufficiency of Evidence of Premeditation

Our standard of review, when sufficiency of the evidence is the issue, is whether, after review of all the evidence, viewed in a light most favorable to the prosecution, this court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham* 247 Kan. 388, 398, 799 P. 2d 1003 (1990).

Our test for premeditation is: Premeditation may be inferred by the jury from various circumstances, including: (1) the nature of the weapon used, (2) the lack of provocation, (3) the defendant's conduct before and after the killing, (4) threats and declarations of the defendant before and during the occurrence, or (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *State v. Henson*, 221 Kan. 635, 639, 562 P.2d 51 (1977).

Here, before Ronald killed Green, he stated that he was going to "put [Green] down," walked 17 feet from one room to the next, fired at Green's ear, pointed and fired at his head, and then pointed and fired at his chest. Two of those shots were fired after Green asked Ronald, "Why'd you do this to me?" He remembers firing at least four shots at Green and that the time lapse between each gunshot ranged from 30 seconds to a minute. After the shooting, Ronald and Sue moved the body outside, and later Ronald used a backhoe to dig a hole and bury the body. Two days later, Ronald phoned Green's mother, lied about her son's whereabouts, and told her to come get Green's vehicle.

When we apply the factors in *Henson*, which concern inferences proving premeditation, to the record before us, we conclude that

the evidence supports the State's position that premeditation was proven.

## DESECRATION EVIDENCE

Prior to trial and in response to a motion in limine which sought to exclude evidence of Ronald's conduct after the killing, the trial court approved a stipulation offered by the State and agreed to by Ronald. The stipulation was: "Instead of introducing evidence of the chickens pecking at the head, that we would just introduce evidence that the defendant placed a metal cover, limestone rock and gravel over the burial site."

Captain Carreno of the sheriff's office investigated the killing, interviewed Ronald on three different occasions, and testified at trial. During the course of Carreno's testimony, there were questions concerning his use of falsehoods as an interrogation technique and concerning whether Ronald was truthful during the interviews.

At one point, Ronald's attorney asked Carreno the following:

"Q. And when you used [your training about when suspects are lying] in your investigative process with your interview, the first interview with Mr. Decker, did you find him to be deceptive to you in the information he gave you?

"A. The only way that I can respond to that, and I go back to this as I sit here today, knowing what I know through the course of the investigation, what he was talking about referring to the murder of Wayne Green, yes. The other questions in which I asked him, he might have been telling the truth, I don't know, I don't feel comfortable saying one way or the other, as opposed to me saying I feel very comfortable sitting here right now telling you that he was telling me the truth about him shooting and killing Wayne Green.

"Q. Okay. What is it that you do not feel comfortable about or you feel he was being less than honest?

"A. Mr. Decker stated during the third, I believe it was the third interview that it got to the point after he shot and killed Wayne Green that he had absolutely no respect for him. He went on to say that not only did he not have any respect for him but there was numerous, numerous times in which he would exit from his trailer, go out on the deck, and urinate on the grave, and the number in which he gave—."

Ronald's attorney then cut off Carreno's answer and objected that Carreno's answer was not responsive, stating that his question referred to Carreno's first interview with Ronald, while Carreno was referring to the third interview. Ronald's attorney made some

reference in passing to the stipulation by stating: "He's now putting in facts that he clearly knows are not to be put in front of this jury."

Defense counsel did not, at this point, move for a mistrial or ask that the jury be instructed to disregard the testimony as being within the terms of the stipulation.

Ronald now claims that the prosecutor committed reversible error when the "urinating on the grave" testimony came out, given the stipulations and the trial objections.

This argument has no merit. The "urinating on the grave" testimony was given during defense counsel's cross-examination, without objection or a later motion to strike.

Even if the argument had merit, it has not been preserved for trial. If a motion in limine is granted to preclude the introduction of certain evidence at trial, and the party who obtained the favorable ruling fails to object to evidence introduced in violation of the order in limine, the failure to object results in the issue not being preserved on appeal. *State v. Moncla*, 262 Kan. 58, 66, 936 P. 2d 727 (1997).

## PHOTOGRAPH

The prosecution offered into evidence a photograph of the decedent's body. Ronald contends that the photograph had no probative value, since the fact of death was not at issue and the photograph did not prove any element of the crime charged.

Ronald failed to include the photograph in the record on appeal. The appellant bears the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. *State v. Valdez*, 266 Kan. 774, 792, 977 P.2d 242 (1999). In the absence of such a record, an appellate court presumes that the action of the trial court was proper. See Supreme Court Rule 3.02 (2002 Kan. Ct. R. Annot. 20). Without the photograph, this court is not in a position to determine that the trial court erred in admitting it into evidence. See *Pate v. Riverbend Mobile Home Village, Inc.*, 25 Kan. App. 2d 48, 52, 955 P.2d 1342 (1998) (without photographs, court was unable to conclude there was material error).

## CUMULATIVE ERROR

Ronald also contends that the trial court committed a sufficient number of errors to require reversal.

We agree that cumulative trial errors, when considered collectively, may be so great as to require reversal of a defendant's conviction when "the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial." *State v. Lumbrera*, 252 Kan. 54, Syl. ¶ 1, 845 P.2d 609 (1992).

To reverse on cumulative error, we would need to conclude that after an examination of the total record, Ronald was denied a fair trial. If the evidence is overwhelming, such a challenge will not prevail. See *State v. Boorigie*, 273 Kan. 18, 41, 41 P.3d 764, (2002).

The only issue at trial was Ronald's state of mind. The theory of the defense was that Ronald did not act with premeditation because he was provoked immediately before shooting Green by statements that Green tried to steal his gun and touched his wife inappropriately. There is overwhelming evidence of premeditation in the record. Review, however, of an alleged error concerning the photograph was precluded due to Ronald's failure to include the photograph in the record on appeal. Notwithstanding that limitation and considering Ronald's theory of the case, the record reveals no reversible trial errors. Therefore, Ronald's argument that he was denied a fair trial fails.

Affirmed.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned▮