No. 95,041

STATE OF KANSAS, *Appellee*, v. RAMON I. FEWELL, *Appellant*.

(184 P.3d 903)

Opinion filed May 30, 2008.

*Carl Folsom, III*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jamie L. Karasek*, assistant district attorney, argued the cause, and *Amy M. Memmer*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Phill Kline*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Ramon I. Fewell was stopped for speeding, detained, and eventually searched by the arresting officer. Based in part upon evidence seized during the search, Fewell was charged with and convicted of possession of cocaine, criminal use of a weapon, possession of drug paraphernalia, and speeding. The Court of Appeals affirmed his convictions, concluding that the trial court properly denied his motion to suppress evidence. *State v. Fewell*, 37 Kan. App. 2d 283, 152 P.3d 1249 (2007). We granted his petition for review on the suppression of evidence issue as well as other issues and affirm.

Facts

On the evening of March 18, 2003, Trooper Mark Engholm observed a Chevrolet Blazer traveling at 80 miles per hour southbound on U.S. Highway 75 in Shawnee County; the posted speed limit on the highway was 70 miles per hour. Trooper Engholm activated his emergency lights and initiated a traffic stop.

After the Blazer and the patrol car pulled on to the shoulder, Trooper Engholm approached the vehicle on the passenger side. As he approached the Blazer, he noticed a strong odor of burnt marijuana emanating from the vehicle's passenger compartment.

Once Engholm was at the passenger-side window, he informed the driver, Fewell, and the passenger, Charles Brown, of the reason for the traffic stop. He asked Fewell to exit the vehicle and step to the rear of the Blazer; he also asked Fewell about the smell of burnt marijuana. Fewell initially stated that he did not detect any such odor; however, he later stated that Brown had been smoking

a "blunt." Engholm knew from his experience that a blunt was a hollowed-out cigar that had been filled with marijuana.

Trooper Engholm instructed Fewell to sit on the back bumper of the Blazer while the trooper spoke with Brown. Brown initially denied having marijuana, but he eventually told Engholm that he had previously had marijuana but that it was all gone because he had smoked it. The trooper then searched Brown and found three bags of marijuana and $1,000 in cash. Engholm subsequently arrested Brown and placed him in the passenger seat of the patrol car.

Once Brown was in the patrol car, Trooper Engholm returned to Fewell. Fewell asked Engholm if he could leave because he had to go pick up Brown's girlfriend. Engholm reminded Fewell that he still had Fewell's driver's license and asked Fewell whether he had " 'anything' " on him. Fewell responded that he did not.

Engholm then began a pat-down search of Fewell's person. Engholm found a switchblade knife in the right front pocket of Fewell's pants and a bent spoon and glass pipe in his left front pocket. The trooper asked why Fewell carried these items, and Fewell responded that he "dabbles in cocaine." Engholm then handcuffed Fewell and waited until another officer arrived at the scene before continuing his search of Fewell. After back-up arrived, Engholm finished his search wearing Kevlar gloves; this search revealed a small bag of crack cocaine clenched in Fewell's right hand.

### District Court

Fewell was charged with and convicted of possession of cocaine, criminal use of a weapon, possession of drug paraphernalia, and speeding. He filed a motion to suppress the cocaine, knife, and glass pipe, claiming that these objects were the fruits of an illegal search. After hearing evidence, the court denied his motion, finding that the odor of the marijuana provided probable cause to search the vehicle and its occupants and that the lack of a warrant was justified by exigent circumstances. In particular, the court relied upon this court's holding in *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 (1993) (odor of marijuana provided probable cause

to search vehicle), finding that "it would be ludicrous to think that you could search the car and not the people" if an officer smelled a strong odor of marijuana emanating from the passenger compartment of the vehicle.

Fewell appealed, claiming (1) the denial of his suppression motion was error; (2) prosecutorial misconduct occurred requiring reversal of his convictions; and (3) cumulative error. In addition, Fewell claimed that his rights under the Sixth Amendment to the United States Constitution were violated by using his criminal history to enhance the severity level of his conviction at sentencing.

### Court of Appeals

A divided panel of the Court of Appeals affirmed Fewell's convictions and sentences, concluding that the district court had properly denied the suppression motion and that the other claims raised in Fewell's appeal were without merit. *Fewell*, 37 Kan. App. 2d at 284, 294. Judge Greene dissented in part, finding that the evidence seized by Engholm (the knife, the pipe, and the cocaine) was the result of an illegal search and thus should have been suppressed. 37 Kan. App. 2d at 294-98 (Greene, J., dissenting).

The *Fewell* majority concluded, based on *MacDonald* and also on *State v. Thomas*, 28 Kan. App. 2d 70, 12 P.3d 420 (2000), *rev. denied* 270 Kan. 903 (2001) (upholding the admission of drug-related evidence obtained by way of a strip search of a detainee at a detention facility when the detainee smelled of marijuana), that the odor of marijuana in Fewell's vehicle provided Trooper Engholm with probable cause to search the occupants of the vehicle. Judge Hill, writing for the majority, explained:

"First, the smell of marijuana gave the trooper probable cause to further detain the vehicle, including Fewell as the driver of that vehicle. Second, the odor created the officer's suspicion that marijuana use had been committed and that such evidence might be found on the driver, especially since the odor was burnt, compared to fresh, and that Fewell admitted that his passenger had smoked a blunt. Here, the trooper was experienced in detecting marijuana odor through his 11 years of law enforcement experience. Consequently, under the circumstances of this case, there was probable cause to search the driver based on the detection of burnt marijuana odor emanating from the vehicle." 37 Kan. App. 2d at 288.

The majority further concluded that exigent circumstances existed that justified the warrantless search of Fewell's person. The court explained that Trooper Engholm "was alone at the stop" and that "if the trooper had sought a warrant, there would have been probable loss or destruction of evidence." 37 Kan. App. 2d at 289.

Judge Greene in dissent acknowledged that "the undisputed facts of this appeal present a close and difficult question" but noted that the continuing investigation resulted in *"lessening* any suspicion that Fewell was involved in criminal activity" with no additional qualitative or quantitative evidence of his involvement. 37 Kan. App. 2d at 294, 297 (Greene, J., dissenting). Because Judge Greene would hold that the search was not supported by probable cause, he explained that he would not reach an analysis of whether the warrantless search was justified by exigent circumstances. 37 Kan. App. 2d at 297 (Greene, J., dissenting).

## Motion to Suppress Evidence

In his petition for review, Fewell contends that this court's decision in *MacDonald* was explicitly limited to the facts of that case, so the lower courts' reliance on that case and an extension of its holding was improper. Fewell points out that no published Kansas case to date has held that odor of marijuana alone provides probable cause to search the occupants of a vehicle, and he argues that the facts in this case do not support such a finding. We emphasize that the issue in this case is not whether the odor of burnt marijuana alone provided probable cause to search the defendant, but rather whether under the totality of circumstances probable cause existed for the search of defendant's person.

### Standard of Review

When a defendant files a motion to suppress evidence, the State bears the burden of proof to demonstrate that the search or seizure that led to the discovery of the evidence in question was lawful. See *State v. Ibarra*, 282 Kan. 530, 553, 147 P.3d 842 (2006).

"In reviewing a district court's decision regarding suppression, this court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with

independent judgment. This court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

Neither party in this case challenges the facts surrounding the search at issue. Because the facts underlying the district court's denial of Fewell's motion to suppress are undisputed, the question of whether the evidence obtained through that search should be suppressed is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

*Discussion and Analysis*

The Fourth Amendment to the United States Constitution, made applicable to the States by way of the Fourteenth Amendment, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Kansas Constitution Bill of Rights, § 15 similarly states that "[t]he right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate." This court has emphasized that these two constitutional provisions provide identical protection. See *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006).

Searches conducted without a warrant are per se unreasonable and, thus, violate these provisions of our federal and state Constitutions, subject only to a few specific, well-defined exceptions. *State v. Platten*, 225 Kan. 764, Syl. ¶ 3, 594 P.2d 201 (1979). The exceptions to the warrant requirement generally recognized in this state are: "consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances . . . ; the emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses." *State v. Conn*, 278 Kan. 387, 390-91, 99 P.3d 1108 (2004); see *State v. Boyd*, 275 Kan. 271, 273-74, 64 P.3d 419 (2003).

The district court and Court of Appeals majority in this case found that Engholm's warrantless search of Fewell in this case was justified on the basis of probable cause to search accompanied by exigent circumstances. This court has explained that in order for this exception to the warrant requirement to justify a warrantless search, the State first must demonstrate probable cause to search and then, if probable cause exists, must demonstrate that the search was conducted under some exigency. See *Ibarra*, 282 Kan. at 553.

We consider the totality of the circumstances to determine whether Engholm had probable cause to search Fewell. See *Illinois v. Gates*, 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 (1983). The Court of Appeals majority concluded that probable cause existed in this case; Judge Greene, in his dissent, disagreed with that conclusion. Only if this court finds that the search was supported by probable cause should it consider the question of whether exigent circumstances justified the failure to obtain a warrant prior to conducting the search.

*Probable Cause*

In *State v. Hays*, 221 Kan. 126, Syl. ¶ 1, 557 P.2d 1275 (1976), this court defined the probable cause necessary to justify a warrantless search as

"a reasonable ground for belief of guilt; and this means less than evidence which would justify condemnation or conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. [Citation omitted.]"

Put another way, " '[p]robable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime.' " *State v. Aikins*, 261 Kan. 346, 355, 932 P.2d 408 (1997) (quoting *State v. Grissom*, 251 Kan. 851, Syl. ¶ 22, 840 P.2d 1142 [1992]). "Because probable cause does not require evidence of every element of a crime, it must not be confused with proof beyond a reasonable doubt." *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004) (citing *Draper v. United States*, 358 U.S.

307, 311-12, 3 L. Ed. 2d 327, 79 S. Ct. 329 [1959]; *Aikins*, 261 Kan. at 355). For this reason, " 'all the information in the officer's possession, fair inferences therefrom, and facts may be taken into consideration that might not be admissible on the issue of guilt.' [Citation omitted.]" *State v. Payne*, 273 Kan. 466, 474, 44 P.3d 419 (2002).

The United States Supreme Court has further clarified:

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [Citation omitted.] Probable cause exists where 'the facts and circumstances within [the acting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Citation omitted.]" *Draper*, 358 U.S. at 313.

In *MacDonald*, this court held that an experienced police officer's recognition of the odor of marijuana emanating from the passenger compartment of a vehicle provides probable cause for a warrantless search of the vehicle. 253 Kan. at 324-25. The court explained its reasoning as follows:

"The trooper had probable cause to further detain the vehicle when he smelled the marijuana odor. In fact, the trial court found that Heim had reasonable suspicion, based on the odor, that there was marijuana in the car. The odor created the needed particularized suspicion of criminal activity. See Annot., Odor of Narcotics as Providing Probable Cause for Warrantless Search, 5 A.L.R. 4th 681, 685 ('it frequently has been held that detection of the odor of fresh marijuana or marijuana smoke, standing alone, provided probable cause for searches of motor vehicles following stops by immigration or customs officers and stops for investigation of possible traffic or equipment violations'). Under the circumstances, it was reasonable for the trooper to act upon his suspicion. The opposite conclusion would require the officer to 'look the other way' and not pursue evidence which signals a crime.

"A majority of courts have found that marijuana odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a warrantless search. *U.S. v. Padron*, 657 F. Supp. 840 (D. Del. 1987), *aff'd without op.* 857 F.2d 1466 (3rd Cir.), *cert. denied* 488 U.S. 974 (1988).

"Heim had probable cause to search the car. The marijuana odor provided the basis for the suspicion that a crime had been committed and that evidence in connection with the crime was located within the automobile." 253 Kan. at 324-25.

In *Thomas*, which in addition to *MacDonald* was the basis for the majority opinion of the Court of Appeals in this case, a police officer was transporting the defendant to jail when the officer noticed a "strong odor of marijuana" coming from him. 28 Kan. App. 2d at 71. The officer advised the jail personnel, who conducted a strip search of the defendant before placing him in the detention facility. This strip search revealed a concealed baggie containing cocaine.

The *Thomas* court affirmed the district court's denial of the defendant's motion to suppress. Relying on *MacDonald*, the court found "[u]nder the unique facts" before it that "the odor of marijuana on a person in custody, coupled with the detention facility's recognized security interest in preventing the introduction of such contraband within its walls, is sufficient to establish probable cause to strip search the person in question." *Thomas*, 28 Kan. App. 2d at 74. But see *State v. Huff*, 278 Kan. 214, 220-21, 92 P.3d 604 (2004) (odor of marijuana emanating from a private residence alone is insufficient to establish probable cause to support a warrantless search of that residence).

Fewell argues that we must decide whether the odor of burnt marijuana emanating from a vehicle lawfully stopped provides probable cause to search the occupants of the vehicle. However, our prior cases suggest that probable cause is a determination based upon the totality of circumstances. We therefore look to the circumstances of this case to resolve the issue of probable cause, recognizing that the smell of burnt marijuana by an experienced law enforcement officer is a significant circumstance to be considered.

We do note that the United States Supreme Court has clarified that probable cause to search a vehicle does not automatically confer upon the executing officers probable cause to search the occupants of that vehicle. See *United States v. Di Re*, 332 U.S. 581, 586-87, 92 L. Ed. 210, 68 S. Ct. 222 (1948). The Court declined to rule as the Government advocated, stating that the Court was "not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." 332 U.S. at 587.

In *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), *reh. denied* 444 U.S. 1049 (1980), the Court clarified further:

"[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. [Citation omitted.] Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. [Citations omitted.]"

This court relied on both *Di Re* and *Ybarra* in *Anderson*, 281 Kan. 896. Police officers stopped a rental truck for traffic violations. On discovering the driver Anderson's identity, the police noted that he was suspected of gang and illegal drug activity and asked him and the passenger to step out of the vehicle. The police noted a baggie containing marijuana sticking out of the passenger's shoe, and a subsequent search of the passenger found that he was carrying $1,300 in his pocket. The police then brought a drug dog to the location where the vehicle was stopped. The drug dog alerted on the truck, but a search of the truck uncovered no additional drugs. The police then decided to search Anderson, who was 30 to 40 feet away from the truck and dog; Anderson fled and discarded baggies containing pills and powder during his flight. A later search of his person revealed other baggies of pills and powder, determined to be Ecstasy.

On appeal from Anderson's drug-related convictions, this court affirmed the decision of the Court of Appeals, which held that the police officers did not possess probable cause to search or arrest Anderson after the search of the truck revealed that there were no drugs in the vehicle. As this court explained in its syllabus, the detention of Anderson

"became unreasonable and thus unlawful after (1) the driver was removed from the truck; (2) a passenger was removed from the truck, found to have drugs and a large amount of cash on his person, and arrested; (3) a drug dog alerted on the unoccupied truck; (4) an exhaustive search of the truck was conducted; and (5) the search turned up no evidence of [a] serious crime committed by the driver.

Earlier reasonable suspicion of illegal drug activity by the driver did not ripen into probable cause for arrest when the truck search yielded no evidence. Rather, reasonable suspicion was dispelled." 281 Kan. 896, Syl. ¶ 4.

Quoting from the Court of Appeals opinion, which discussed both *Di Re* and *Ybarra,* this court emphasized in *Anderson* that there was no particularized suspicion that Anderson was involved in drug activity. *Anderson* explained that after the search of the truck did not reveal any drugs,

" 'the officers' reasonable suspicions that Anderson was involved in drug activity should have lessened. The officers had pursued a method of investigating the suspected drug activity that did not produce anything which would point to Anderson. The search of the truck did not produce any incriminating evidence. Although officers had discovered drugs and money on Golston, they found no incriminating evidence which would indicate that Anderson could be linked to these items. . . . The continued detention of Anderson after the officers failed to discover drugs in the truck became unreasonable. It is apparent that the officers' continued detention of Anderson was based on a hunch.' " 281 Kan. at 904 (quoting *State v. Anderson,* 34 Kan. App. 2d 375, 388, 119 P.3d 1171 [2005]).

*Di Re, Ybarra,* and *Anderson* do not foreclose the possibility that probable cause to search the occupants of a vehicle may exist. However, in order to validate such a search, the State must establish that probable cause exists that the particular occupant searched has engaged or is engaging in some criminal activity. Presence with others independently suspected of criminal activity will not suffice, without more, to give rise to probable cause to search that particular person.

At the same time, courts have repeatedly found that both drivers and passengers in vehicles have a lesser expectation of privacy than individuals in a private residence. For example, in *Wyoming v. Houghton,* 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), where the Supreme Court held that police officers searching a vehicle could search the passengers' belongings in the vehicle if the belongings could conceal the object of the search; the Court reasoned:

"Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which 'trave[l] public thoroughfares,' [citation omitted], 'seldom serv[e] as . . . the repository of person effects,' [citation omitted], are subjected to police stop and examination to enforce

'pervasive' governmental controls '[a]s an everyday occurrence,' [citation omitted], and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny." 526 U.S. at 303.

### Totality of the Circumstances

Trooper Engholm testified at the suppression hearing that upon approaching Fewell's vehicle, he smelled a strong odor of burnt marijuana. As indicated by the Court of Appeals, the fact that Engholm smelled *burnt* marijuana, rather than *fresh* marijuana, is particularly telling, in that it indicates that someone inside the vehicle had very recently engaged in criminal activity. Fewell and Brown were the only occupants of the vehicle. Moreover, Fewell's first encounter with Trooper Engholm, far from dispelling the officer's suspicion, increased his suspicion because Fewell denied the existence of the burnt marijuana smell emanating from the vehicle. Upon further discussion, Fewell admitted to the smell and identified Brown as the only person who had been smoking a blunt in the vehicle prior to the stop. Brown represented to the officer that he had smoked all of the marijuana in his possession, but Engholm's subsequent search of Brown revealed additional baggies of marijuana on his person.

The facts in the present case are distinguishable from those in *Anderson*, where the court held that there was no probable cause to search the driver of a truck when drugs had been found on the passenger, when a drug dog had alerted on the unoccupied truck, with the driver standing 30 to 40 feet away, and a search of the truck revealed no contraband. See *Anderson*, 281 Kan. at 904. In *Anderson*, there was nothing to link the driver to the drugs on the passenger, and the drug dog alerted on the truck, not the driver himself. Thus, the circumstances in *Anderson* resulted in *lessening* any suspicion that defendant was involved in criminal activity. Contrary to Judge Greene's conclusion in this case, circumstances in addition to the smell of burnt marijuana did not lessen suspicion, but rather increased suspicion that both Fewell and Brown were involved in illegal activity.

The odor of burnt marijuana emanating from the passenger compartment of the vehicle demonstrated that someone in the ve-

hicle had recently been in possession of and/or smoking marijuana. Fewell and Brown were the only persons in the vehicle at the time of the stop. Moreover, the driver's denial of the smell of burnt marijuana to the officer and his later admission that it was the passenger who smoked the blunt tends to increase suspicion and link the driver to the crime rather than mitigate that suspicion. The response of Brown, the passenger, did nothing to dispel suspicion that both were involved in criminal activity upon responding to Trooper Engholm's questions. While presenting a close case, we find that the totality of circumstances—the odor of burnt marijuana coming from the enclosed passenger compartment of Fewell's vehicle, as well as Fewell's initial and final responses to Engholm's inquiries and Brown's response to the officer—provided Engholm with a particularized suspicion that Fewell may have been engaging in illegal activity.

Moreover, the testimony at the suppression hearing and at trial indicated that Engholm was an experienced officer who had been trained to recognize the odor of marijuana. Engholm testified that he had been a trooper for 11 years and had on several occasions made stops or written citations for possession of marijuana. On appeal, Fewell does not contest Engholm's experience or ability to recognize the distinctive odor of burnt marijuana. The totality of the circumstances in this case demonstrate that Engholm's search of Fewell was reasonable—*i.e.,* that it was supported by probable cause.

In his dissent, Judge Greene stated that although the odor of marijuana may have heightened the suspicion of the officer, Engholm's later conversations with Fewell and Brown, the cooperative spirit of Fewell, and the search of Brown should have lessened that suspicion. In particular, Judge Greene gave much weight to the fact that Brown never implicated Fewell during his conversation with the trooper. Judge Greene also points out that Engholm never stated that the odor of marijuana came from Fewell's person. See *Fewell*, 37 Kan. App. 2d at 295-97 (Greene, J., dissenting).

While it is true that Engholm never testified that Fewell smelled of burnt marijuana, the issue was never raised or discussed at trial. More importantly, neither Fewell nor Brown was entirely forth-

coming with Engholm, in that both men initially denied smelling any odor of burnt marijuana. Fewell then implicated Brown, stating that Brown had been smoking a blunt. Brown after some time admitted smoking a blunt but stated that all the marijuana was gone. His statement was false, as Engholm's subsequent search of Brown revealed three baggies of fresh marijuana and $1,000. Furthermore, immediately after Brown was arrested, Fewell asked if he could leave to go pick up Brown's girlfriend. Under these circumstances, nothing occurred that would have diminished the officer's initial suspicion, due to the strong odor of burnt marijuana coming from Fewell's vehicle, that Fewell had engaged in illegal activity and possessed evidence of such upon his person.

As the United States Supreme Court explained in *Draper*, probable cause is not an exact science, but rather is based on " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [Citation omitted.]" 358 U.S. at 313. The facts in this case are " 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Citation omitted.]" 358 U.S. at 313. Thus, we conclude—as did the trial court and the Court of Appeals—that Engholm's search of Fewell was supported by probable cause.

### Exigent Circumstances

Because Trooper Engholm had probable cause to believe that Fewell had engaged in or was engaging in criminal activity based on the odor of burnt marijuana and the responses of Fewell and Brown during the traffic stop, this court must next consider whether the warrantless search of Fewell was justified by exigent circumstances. "Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband. In each case, the particular facts must be considered. See 79 C.J.S., Searches and Seizures § 63, and the many cases cited therein." *State v. Houze*, 23 Kan. App. 2d 336, 337, 930 P.2d 620, *rev. denied* 261 Kan. 1088 (1997); see also *United States v. Elkins*, 300 F.3d 638, 655 (6th Cir. 2002) ("Exigent circumstances . . . may arise

when evidence of drug crimes is in danger of destruction."). However, this court has emphasized that the exigent circumstances exception to the warrant requirement "do[es] not include situations where only a mere possibility exists that evidence could be destroyed or concealed. [Citation omitted.]" *State v. Boyd*, 275 Kan. 271, 274, 64 P.3d 419 (2003).

Fewell does not argue in his brief or petition for review that the warrantless search was not justified by exigent circumstances. Instead, his only argument regarding his motion to suppress is that the search was not supported by probable cause. We conclude that the district court did not err in finding that exigent circumstances existed in this case that justified the warrantless search of Fewell's person in order to prevent the imminent destruction or concealment of evidence. The district court correctly denied Fewell's motion to suppress the evidence in this case.

## Prosecutorial Misconduct

Fewell next contends that the prosecutor committed reversible misconduct at trial by asking questions during the direct examination of Trooper Engholm that required the trooper to comment on Fewell's credibility and by referencing evidence that had been specifically excluded in violation of an order in limine. Fewell claims that both of these alleged instances of misconduct are reversible behavior and also argues that this alleged misconduct cumulatively denied him the right to a fair trial.

The Court of Appeals concluded based upon undisputed facts that Fewell's claims of prosecutorial misconduct were not error and did not constitute prosecutorial misconduct. *Fewell*, 37 Kan. App. 2d at 290-94.

### Standard of Review

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, an appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the

defendant and denied the defendant a fair trial. *State v. Swinney*, 280 Kan. 768, 779, 127 P.3d 261 (2006). In its plain error analysis, the appellate court considers three factors:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors, unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman* [*v. California*], 386 U.S. 18, [17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967) (conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial)], have been met. [Citations omitted.]" *Swinney*, 280 Kan. at 780.

When a defendant claims that a prosecutor committed reversible misconduct, the prejudicial nature of alleged errors are analyzed in the context of the trial record as a whole. *State v. Whitaker*, 255 Kan. 118, 134, 872 P.2d 278 (1994).

Finally, a party must ordinarily make a timely and specific objection to an alleged error in order to preserve the issue for appellate review. See K.S.A. 60-404; *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006). However, when a defendant's claim for prosecutorial misconduct implicates his or her right to a fair trial, an appellate court reviews the alleged misconduct under the same analysis, regardless of whether an objection was made. *Swinney*, 280 Kan. at 779.

*Eliciting Comments on Fewell's Credibility*

Fewell argues that the prosecutor committed reversible misconduct by asking a question during the direct examination of Trooper Engholm that required the trooper to comment on Fewell's credibility during the traffic stop. The following exchange took place between the prosecutor and Engholm at trial:

"Q. And what did you indicate to him [Fewell] when you got to the back of the car?

"A. I confronted him about the odor of marijuana, the burnt marijuana being in the vehicle.

"Q. How did you confront him?

"A. I told him I smelled—I said, 'What's with the marijuana in your vehicle?'

"Q. And what was his response, initial response?

"A. He initially acted like there was no odor, that I was just, I guess, smelling things.

"Q. Did you have a response to that?

"A. Yes. Ah, I—I told him that obviously I'm smelling this, there is obviously a smell of marijuana in the vehicle, and this can go one of two ways.

"Q. Okay. Fair to say—well, let me ask you. Were you angry when he indicated he didn't know anything about the smell?

"A. It's not anger, I would say it's just kind of frustration.

"Q. Explain that for the jury.

"A. Well, I have been doing this for eleven years. I have been around marijuana and burnt marijuana and drugs during that time. Ah, I know what the odor is, there is no other odor like it, it is a distinct odor, and it just never fails to amaze me when people will say what, what are you talking about, I don't know what that is type thing, so it's more of an exasperation, frustration. *People will lie about something just so simple.*

"Q. And did you indicate to him—you said you indicated to him it could go one of two ways?

"A. Yes." (Emphasis added.)

Fewell argues that Engholm's statement, "People will lie about something just so simple," was an improper comment on the defendant's credibility and that the prosecutor's line of questioning above constituted prosecutorial misconduct in that it was designed to elicit the trooper's response. Fewell did not object to this exchange between the prosecutor and Engholm.

This court has long held that "[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper. It is the province of the jury to weigh the credibility of the witnesses." *State v. Manning*, 270 Kan. 674, 698, 19 P.3d 84 (2001). In *State v. Elnicki*, 279 Kan. 47, 53, 105 P.3d 1222 (2005), the court relied on this rule that witnesses cannot comment on other witnesses' credibility as a basis for its conclusion that it was error to show a videotaped interrogation to the jury wherein a police detective repeatedly called the defendant a liar and made other comments regarding the defendant's credibility. See also *State v. Pabst*, 268 Kan. 501, 505-07, 509-12, 996 P.2d 321 (2000) (prosecutor committed reversible misconduct by calling the defendant a liar at least 11 times during closing argument and by commenting on the credibility of the State's witness).

The *Elnicki* court provided the following description of the police detective's erroneous comments contained in the videotape that was shown to the jury in that case:

"The jury heard a law enforcement figure repeatedly tell Elnicki that he was a liar; that Elnicki was 'bullshitting' him and 'weaving a web of lies.' The jury also heard the same law enforcement figure suggesting he could tell Elnicki was lying because Elnicki's eyes shifted. A jury is clearly prohibited from hearing such statements from the witness stand in Kansas and likewise should be prohibited from hearing them in a videotape, even if the statements are recommended and effective police interrogation tactics." 279 Kan. at 57.

Although *Elnicki* did not explicitly conclude that the introduction of the videotape constituted reversible error, the court held that the admission of the videotape and several instances of prosecutorial misconduct together required reversal of the defendant's conviction in that case. 279 Kan. at 68.

The Court of Appeals distinguished the questioning in this case from the videotape in *Elnicki,* reasoning:

"First, the trooper's isolated reference did not rise to the level in *Elnicki* where the detective repeatedly commented on the defendant's veracity. Second, the trooper's comment focused on a generality, while the detective's comments were made directly against Elnicki. Third, as *Elnicki* suggested, the trooper testified in court, explaining the inconsistencies in Fewell's story regarding the marijuana odor." *Fewell,* 37 Kan. App. 2d at 291-92.

The panel further found that even if such questioning was improper, it did not constitute plain error because it was neither gross and flagrant nor overly prejudicial. 37 Kan. App. 2d at 292.

While the Court of Appeals' analysis distinguishing Fewell's case from *Elnicki* is persuasive, it must be noted that the discussion of the videotape in *Elnicki* did not arise in the context of a claim for prosecutorial misconduct but, instead, was a question regarding the admission of evidence. See *Elnicki,* 279 Kan. at 50-51. By framing his claim as an issue of prosecutorial misconduct, however, Fewell seeks to circumvent the rule requiring a specific objection to the admission of evidence in order to preserve the issue for appeal. See K.S.A. 60-404. Prosecutorial misconduct requires no objection in order to preserve the issue for appellate review, but an objection

must be lodged to preserve an issue regarding the admissibility of evidence. See *Swinney*, 280 Kan. at 779.

The purpose of the rule requiring a timely and specific objection is to give " 'the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial.' " *State v. Moore*, 218 Kan. 450, 455, 543 P.2d 923 (1975). Fewell's claim of prosecutorial misconduct thwarts the purpose of the specific objection rule. This court has reiterated that " '[t]he law of this state is realistic. Substance prevails over form.' " *Murray v. Modoc State Bank*, 181 Kan. 642, 647, 313 P.2d 304 (1957) (quoting *Travis v. Bishoff*, 143 Kan. 283, 285, 54 P.2d 955 [1936]). Fewell's prosecutorial misconduct claim is truly an evidentiary issue that has not been preserved for appellate review.

Nevertheless, even if we were to consider Fewell's argument in the context of prosecutorial misconduct, a review of the actual questions asked by the prosecutor in his direct examination of the trooper demonstrate that no misconduct occurred. The prosecutor's questions that led to Engholm's response and the basis for Fewell's claim consisted of the following: The prosecutor asked, "Were you [Engholm] angry when he indicated he didn't know anything about the smell?" After Engholm responded that he was more frustrated than angry, the prosecutor stated, "Explain that for the jury." After a lengthy response, Engholm concluded by generally noting that "[p]eople will lie about something [whether there was an odor of marijuana] just so simple." The prosecutor did not ask a question that in any way attempted to elicit testimony from Engholm regarding Fewell's credibility.

Finally, Fewell subsequently acknowledged the marijuana odor in his conversation with Engholm and stated that Brown had been smoking a blunt. Thus, Engholm did not specifically accuse Fewell of lying, and the trooper's later testimony gave credence to his general observation based on experience that people tend to deny smelling marijuana even if such a denial is untruthful. For all of these reasons, the prosecutor's questions did not constitute misconduct.

*Comments Regarding Excluded Evidence*

Prior to the commencement of Fewell's trial, defense counsel made an oral motion in limine requesting the district court to ex-

clude any discussion of the bent spoon that was found in Fewell's pocket because the spoon was not included in the charges against him. The court granted this motion. Fewell argues that the prosecutor implicitly violated the court's order on two occasions: once when questioning Engholm about the items seized during the search and once when describing the video of the traffic stop recorded by the camera in Engholm's patrol car.

### Question Relating to Items Seized

The following exchange took place between the prosecutor and Engholm on direct examination at trial:

"Q. Did you recover *any items that later led to charges in this case?*
"A. Yes.
"Q. And describe those items that led to the charges in this case.
"A. There was a switch blade knife with a three-and-three-quarter-inch blade, there is a glass pipe— I'm sorry.
"Q. No, keep going.
"A. I'm getting ahead of myself.—a glass pipe that's used for smoking various types of illicit, illegal drugs, and there was a small bag containing a rock of what was later identified as crack cocaine." (Emphasis added.)

Fewell did not object to this testimony at trial. He now claims that the italicized portion of the prosecutor's question above *implicitly* violated the district court's order in limine, because the prosecutor's reference to "items that later led to charges" indicates that Engholm also recovered items that did *not* lead to charges, *i.e.*, the bent spoon.

The Court of Appeals found that the above exchange did not violate the order in limine because no mention was made of the bent spoon. *Fewell*, 37 Kan. App. 2d at 292-93. We agree. In order to arrive at the conclusion drawn by Fewell—that the prosecutor's comment referred to the bent spoon—this court would have to make the unreasonable assumption that the jury would interpret the question as Fewell has here. Instead, the plain language of the question—and the plain meaning of that language—simply asks what items were found on Fewell that formed the basis for the charges in this case. Contrary to Fewell's argument, the prosecutor's question was carefully constructed in order to avoid any men-

tion of the bent spoon and was not a back-handed attempt to evade the defendant's motion.

Furthermore, this court has repeatedly held that if one party's motion in limine is granted to exclude the admission of certain evidence at trial but that party does not object to the admission of such evidence at trial, then the issue is not preserved for appeal. See *State v. Decker*, 275 Kan. 502, 507, 66 P.3d 915 (2003). It appears that Fewell is attempting to circumvent this requirement by framing the issue as one of prosecutorial misconduct. In any event, his claim on this issue is without merit.

### Question Relating to Redacted Video

In addition to granting Fewell's motion in limine as to the bent spoon, the district court ruled prior to trial that certain portions of the video of Engholm and Fewell's encounter that contained statements made by Fewell after he was handcuffed without having received *Miranda* warnings should be redacted. The State removed these portions from the video. At trial, the prosecutor introduced the video during the direct examination of Trooper Engholm by way of the following exchange:

"Q. . . . As to the video, you have had an opportunity to review that video, is that correct?

"A. Yes.

"Q *And there has been some adjustments made to that video, is that correct, due to rulings in this case?*

"A. Yes.

"Q. Absent those adjustments, is that video an accurate description and depiction of the events that occurred that night?

"A. Yes." (Emphasis added.)

Although Fewell's defense counsel objected to the admission of the video, this objection was on the basis that his counsel had not yet reviewed the redacted video before trial and so was unable to determine whether all of the information she had requested be redacted had been removed. Fewell's defense counsel never objected to the above exchange or claimed that it violated the order in limine.

Again, it appears that defense counsel's failure to object to the allegedly problematic question amounts to a failure to preserve the issue for appeal. See *Decker*, 275 Kan. at 507. However, even if this court determines that it should review Fewell's claim since it is framed as a question of prosecutorial misconduct, that claim is devoid of merit.

The Court of Appeals rejected Fewell's claim:

"In *State v. Kemp*, 30 Kan. App. 2d 657, 663, 46 P.3d 31 (2002), the court held an adequate foundation for the admission of a videotape requires testimony that the tape accurately represents the events presented and that testimony that an admitted copy is identical to the original videotape is insufficient. Here, it appears that the State was attempting to lay the foundation of the redacted videotape to be admitted later in the trial, and in order to comply with *Kemp*, the State had to comment that the videotape had been adjusted." *Fewell*, 37 Kan. App. 2d at 293.

As the Court of Appeals concluded in its opinion, the purpose of the comments regarding the redacted videotape was to lay the foundation for admitting that tape into evidence, not to implicitly violate the order in limine. 37 Kan. App. 2d at 293. This conclusion is supported by the State's comments as well as statements by the district court. Outside the presence of the jury and before the video was shown to the jury, the State explained at a conference between the court and parties that "the trooper testified to the basis of having it [the video] admitted." In addition, the court instructed the jury prior to the playing of the video that "there has been some parts of this excised, so basically that's pursuant to the Court's ruling."

At no time during the discussion of the redacted video did the prosecutor mention, or even hint at, the presence of other drug paraphernalia found during the search of Fewell, *i.e.*, the bent spoon. In fact, the spoon was never mentioned in the presence of the jury during the entire trial. Fewell's claim again requests this court to unreasonably interpret the prosecutor's question. We conclude that the prosecutor complied with the order in limine, and the comments highlighted by the defendant on appeal do not constitute misconduct.

*Cumulative Misconduct*

Fewell last contends with regard to prosecutorial misconduct that the combination of the alleged errors augmented the alleged

misconduct and, thus, should lead to reversal. As the previous discussion indicates, the comments and questions highlighted by the defendant on appeal do not constitute prosecutorial misconduct individually. Because the prosecutor did not commit error at the trial level, Fewell's argument regarding cumulative misconduct also fails.

## Cumulative Error

Fewell contends that even if the alleged errors discussed previously do not individually demand reversal, the cumulative effect of these alleged errors denied him the right to a fair trial. In *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006), this court discussed its standard for reviewing claims of cumulative error:

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. [Citation omitted.]"

Fewell's claims regarding the denial of his motion to suppress and prosecutorial misconduct are resolved in this opinion against him. Because the defendant has not successfully demonstrated that any error occurred before the district court, his claim for cumulative error necessarily fails. See *State v. Humphery*, 267 Kan. 45, 64, 978 P.2d 264 (1999).

## Prior Convictions Not Proved by Jury Trial

Fewell claims his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when his criminal history score was enhanced by prior convictions that were not included in the complaint and were not determined by a jury beyond a reasonable doubt. Fewell did not object to his designated criminal history score of H. As a result of this history and the severity level of Fewell's primary conviction, the district court sentenced him to 13 months' imprisonment (the middle score in the sentencing box), then suspended this sentence and placed Fewell on 12 months' probation, followed by 12 months' postrelease supervision.

*Standard of Review*

In arguing that the use of his prior criminal convictions in determining his criminal history score violates the Sixth and Fourteenth Amendments, Fewell is essentially arguing that the horizontal axis of the sentencing grid under the Kansas Sentencing Guidelines Act (KSGA, K.S.A. 21-4701 *et seq.*), the criminal history axis, is unconstitutional. See *State v. Ivory*, 273 Kan. 44, 45, 41 P.3d 781 (2002). The constitutionality of the KSGA sentencing grid is a question of law over which this court has unlimited review. 273 Kan. at 46.

*Analysis*

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the United States Supreme Court held: *"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) This "prior conviction" exception originated 2 years prior to the *Apprendi* decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), where the Court concluded that a prior conviction is a sentencing factor, not an element of a crime, and thus did not need to be proven beyond a reasonable doubt.

Fewell claims that the justices who decided *Apprendi* expressed reservations regarding the previous holding in *Almendarez-Torres*, demonstrating that the Court has serious doubts concerning the continued viability of that decision.

In *Ivory*, this court rejected the exact argument that Fewell raises in the instant case. Quoting the Ninth Circuit Court of Appeals in *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2001), the *Ivory* court explained:

" 'It is true that in *Apprendi*, the Court expressed reservations about *Almendarez-Torres*. [Citation omitted.] However, the Court reasoned that any due process or Sixth Amendment concerns—arising out of the judicial determination of a "fact" that increased punishment beyond the statutory maximum—were mitigated in *Almendarez-Torres* by "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did

not challenge the accuracy of that 'fact' in his case." [Citation omitted.] Thus, the Court in *Apprendi* chose not to overrule *Almendarez-Torres*, and unmistakably carved out an exception for "prior convictions" that specifically preserved the holding of *Almendarez-Torres*.' [Citations omitted.]" *Ivory*, 273 Kan. at 46-47.

Under this reasoning, *Ivory* upheld the constitutionality of the sentencing court's use of prior convictions in determining a defendant's criminal history under the KSGA. 273 Kan. at 47-48.

In *State v. Gonzalez*, 282 Kan. 73, 114-18, 145 P.3d 18 (2006), this court reaffirmed its conclusion in *Ivory*, noting that the United States Supreme Court, as well as the federal circuit courts, continue to recognize that prior convictions are sentencing factors that need not be included in the complaint or information or proven beyond a reasonable doubt.

The cases decided by the Supreme Court after this court issued its opinion in *Gonzalez* continue to affirm the constitutionality of the use of prior convictions for purposes of sentencing enhancement. In particular, the Court explained in *James v. United States*, 550 U.S. 192, 214 n.8, 167 L. Ed. 2d 532, 127 S. Ct. 1586 (2007):

"To the extent that James contends that the simple fact of his prior conviction was required to be found by a jury, his position is baseless. James admitted the fact of his prior conviction in his guilty plea, and in any case, we have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes. *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998)."

See also *Rita v. United States*, 551 U.S. 338, 353, 168 L. Ed. 2d 203, 127 S. Ct. 2456 (2007) (quoting with approval *United States v. Booker*, 543 U.S. 220, 244, 160 L. Ed. 2d 621, 125 S. Ct. 738 [2005], which stated that " '[a]ny fact [other than a prior conviction] which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt' "); *Cunningham v. California*, 549 U.S. 270, 274-75, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007) ("the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant").

Fewell acknowledges this court's decision in *Ivory* but claims that case was wrongfully decided and invites this court to revisit its ruling there. Fewell cites no authority for this assertion but, instead, reiterates the arguments raised by the defendant in *Ivory* regarding the Court's opinions in *Apprendi* and *Almendarez-Torres*.

The Supreme Court, the federal circuit courts, and this court have continued to hold that the use of prior convictions for sentencing enhancement is constitutional. This court's decision in *Ivory* remains good law. Therefore, Fewell's sentence did not violate the federal Constitution, and this final issue raised in his petition for review is without merit.

Judgment of the Court of Appeals affirming the district court is affirmed.

LUCKERT, J., concurring in part and dissenting in part: I dissent from the majority's determination that there was probable cause to search the person of Ramon I. Fewell. I concur in the other holdings of the majority.

Regarding the majority's analysis of the probable cause issue, I do not quarrel with the statements regarding the applicable law. Rather, I disagree with the application of those principles to the facts of this case. Specifically, I reject the majority's conclusion that the officer's investigation did not lessen the reasonable suspicion that arose from Fewell's presence in a vehicle that smelled of burnt marijuana.

As the majority recognizes, probable cause to arrest or search a particular individual does not arise merely because that person is present at the scene of a crime or in the company of someone who is believed to have committed a crime. Rather, to justify a search or arrest of a particular individual, there must be "probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), *reh. denied* 444 U.S. 1049 (1980); see also *Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968) (probable cause did not arise because defendant talked to known drug users over period of

several hours). In this case, there is no circumstance that raises a particularized suspicion that Fewell engaged in illegal activity.

Rather, the particularized circumstances pointed suspicion toward the passenger and away from Fewell. As the officer gained information during the course of the traffic stop, the passenger was singled out as the one who had committed the crime—Fewell accused the passenger, the passenger admitted culpability, and the search of the passenger revealed he possessed marijuana on his person.

The effect of such a singling out of one suspect over another was discussed in a case cited by the majority, *United States v. Di Re*, 332 U.S. 581, 92 L. Ed. 2d 210, 68 S. Ct. 222 (1948). In *Di Re*, an informant advised a government investigator that the informant could buy counterfeit ration coupons from a particular individual. The investigator followed the suspect and approached a car occupied by the suspect, Di Re, and the informant. The informant had counterfeit coupons in his hand. When asked about the coupons, the informant stated he received them from the driver. Despite no evidence particularized toward Di Re, he was arrested. The Government argued there was probable cause to believe Di Re was implicated in a conspiracy to knowingly possess counterfeit coupons. The Court rejected the argument, noting that Di Re's presence was the only link between him and the crime. Moreover, the Court noted that "whatever suspicion might result from . . . mere presence seems diminished, if not destroyed" when the informant did not incriminate Di Re. 332 U.S. at 594. The Court noted there was no reason for the informant not to implicate everyone involved in the crime, but he had not mentioned Di Re. "Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." 332 U.S. at 594.

Subsequently, this singling out was an important point of distinction when the Court decided *Maryland v. Pringle*, 540 U.S. 366, 157 L. Ed. 2d 769, 124 S. Ct. 795 (2003). In *Pringle*, an officer stopped a vehicle for speeding. A consensual search of the vehicle revealed cocaine behind the upright back-seat armrest and $763 in the glove compartment. The officer told the three occupants

that unless one of them admitted ownership all would be arrested. No one spoke up, and the officer arrested all the occupants. At the police station, Pringle confessed and the others were released. Rejecting Pringle's argument he had been arrested without probable cause, the Court contrasted the situation to that in *Di Re* where the informant incriminated only one suspect. The *Pringle* Court noted: "No such singling out occurred in this case; none of the three men provided information with respect to the ownership of the cocaine or money." 540 U.S. at 374.

A similar focus upon whether a particular suspect is singled out during an investigation can be found in Kansas cases. For example, in *State v. Anderson*, 281 Kan. 896, 136 P.3d 406 (2006), as more fully discussed by the majority, this court found law enforcement officers did not have probable cause to arrest a driver after a traffic stop investigation pointed to the passenger as the wrongdoer. Officers had observed a bag of marijuana protruding from a passenger's shoe, and a drug dog had alerted on the car. Yet, a search of the vehicle did not reveal any additional illegal substances, and there were no other particularized circumstances that pointed to the driver.

*Anderson*, like *Di Re* and *Pringle*, suggests that a narrowing of suspicion reduces, if not eliminates, suspicion regarding someone who is merely present at the scene of the crime. Under such circumstances probable cause is not established.

The majority distinguishes *Anderson* by concluding that the investigation did not lessen suspicion regarding Fewell, but rather linked him to the crime. *Fewell*, 286 Kan. at 382-83. The majority mentions four circumstances: (1) Fewell's presence in the vehicle while, according to the passenger's admission, the passenger smoked marijuana; (2) Fewell's initial denial that there was an odor of burnt marijuana; (3) the passenger's lie that he did not have any more marijuana, and (4) Fewell's query about whether he was free to leave to pick up the passenger's girlfriend. Contrary to the majority's conclusion, these circumstances—whether considered separately or, as we must do under the totality of the circumstances doctrine, in combination—do not link Fewell to the commission of a crime.

The majority's focus on the smell emanating from the passenger compartment seems to imply agreement with the officer's suspicion that the blunt had been shared. As appropriately concluded by the Arizona Court of Appeals, a belief that marijuana is commonly shared is not sufficient to establish probable cause:

"[T]he officer relied upon his experiential knowledge of a custom for two or more persons to sit and share in the smoking of a marijuana cigarette. But if the smoking of a marijuana cigarette where two or more persons are seated together is usually or in a majority of instances a joint activity, it is not always or necessarily such. While some persons in proximity to one engaged in this form of illicit activity may join in it, others may not." *State v. Hansen*, 117 Ariz. 496, 498, 573 P.2d 896 (Ariz. App. 1977).

The Arizona court went on to note that probable cause could be established if there was an indicia of sharing, such as an officer's observations of hand gestures consistent with passing a cigarette back and forth or a "direct attribution of odor" to the defendant. 117 Ariz. at 498-99; see also *People v. Spriggs*, 38 Ill. App. 3d 737, 738-40, 348 N.E.2d 468 (1976) (discussing cases where there was or was not a direct attribution of odor and effect on determination of probable cause).

No such indications of joint conduct exist in this case. The majority discounts the lack of evidence regarding such factors, specifically regarding the lack of any evidence regarding an odor of marijuana emanating from Fewell. 286 Kan. at 383-84. The majority is correct that we cannot surmise that there was no odor emanating from Fewell; rather, all we know is that the presence of an odor on him was not discussed on the record. Nevertheless, the fact that the State did not present any evidence substantiating the suspicion that the marijuana was shared or suggesting there was any type of joint conduct means the State failed to meet its burden and present circumstances particularized toward Fewell.

The majority adds to the circumstance of presence "Fewell's first encounter with Trooper Engholm [that], far from dispelling the officer's *suspicion*, increased his *suspicion* by denying the existence of the burnt marijuana smell emanating from the vehicle." (Emphasis added.) 286 Kan. at 382. I agree this denial may have made the officer suspicious. Nevertheless, especially in light of the pas-

senger's subsequent admission, there is no basis to conclude that Fewell was doing anything other than protecting his passenger. Moreover, as the majority points out, at most there was a suspicion.

Next, the majority adds the fact that the passenger lied. Yet, the majority fails to explain (and I fail to understand) how this links Fewell to the smoking of marijuana. The fact that the passenger was not forthcoming about possessing additional marijuana does not mean that Fewell was aware of the contents of his passenger's pockets or that there was any joint conduct. I concede that this point distinguishes *Di Re*, 332 U.S. at 594, where there was no reason to question the credibility of the informant. See also *State v. Morris*, 276 Kan. 11, 24, 72 P.3d 570 (2003) (probable cause is dependent upon both the content of information possessed by police and its degree of reliability). Yet, while the passenger's statements in this case may be viewed with suspicion, the statements do not link Fewell to the crime. Even if the passenger's credibility is discounted, the circumstances single out the passenger and do not point toward Fewell.

Finally, the majority refers to Fewell's request to leave so he could pick up his passenger's girlfriend. In my view it is inappropriate to base probable cause on a citizen's demand that officers do what the law requires: minimize the intrusion arising from a vehicle stop. See *State v. Smith*, 286 Kan. 402, 406-19, 184 P.3d 890 (2008) (discussing nature of traffic stop and temporal limits). Without probable cause, the officer had no justification to continue to detain Fewell, and he was within his rights to ask to be able to leave.

None of these circumstances discussed by the majority link Fewell to the crime. Perhaps they arouse suspicion and, admittedly, the line between reasonable suspicion and probable cause is difficult to draw. Nevertheless, without any circumstance other than presence to link Fewell to the crime, probable cause is not established. The State does not justify the search based upon officer safety or any other exception to the warrant requirement. Thus, there is no basis for the search of Fewell's person, and the evidence obtained from that search should be suppressed.

ROSEN and JOHNSON, JJ., join in the foregoing concurring and dissenting opinion.