(152 P.3d 1249)
No. 95,041

STATE OF KANSAS, *Appellee,* v. RAMON I. FEWELL, *Appellant.*

Opinion filed March 2, 2007.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Amy M. Memmer,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

HILL, J.: In this appeal we must answer the question whether it is permissible for a trooper, who smelled the odor of burnt marijuana coming from inside the passenger compartment of a car, to search the driver of a car stopped for speeding. Under the facts of this case—where the odor is of burnt marijuana and the driver admitted the passenger in the car had just smoked some marijuana, the trooper was alone at the scene, and any evidence could have easily been destroyed—we hold that there was probable cause to search the driver and exigent circumstances supported the warrantless search. Therefore, we affirm the district court's denial of the motion to suppress.

## Background Facts and Prior Proceedings

Trooper Mark Engholm stopped Ramon I. Fewell for speeding in Shawnee County. Upon approaching the passenger side of the vehicle, the trooper smelled a strong odor of burnt marijuana coming from the interior of the vehicle. The trooper then asked Fewell, the driver, to step out of the car and meet him at the rear of the vehicle.

At the rear of the vehicle, the trooper questioned Fewell about the marijuana odor. Initially, Fewell denied there was an odor but then admitted to the trooper that the passenger of his car had smoked a "blunt." Relying on his 11-year experience with the highway patrol and the sheriff's department, the trooper knew that a blunt was a hollowed out cigar with marijuana placed into it. Consequently, the trooper left Fewell to speak to the passenger. Upon searching the passenger, the trooper discovered three bags of marijuana and $1,000 in cash.

The trooper then returned to Fewell and conducted a pat-down search, finding a switchblade knife, a bent spoon, and a glass pipe

on Fewell's person. The trooper arrested Fewell and waited for backup. Notably, during that time, the trooper did not advise Fewell of his *Miranda* rights. See *Miranda v. Arizona*, 385 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966). Once back-up arrived, the trooper further searched Fewell and found a small bag of crack cocaine in Fewell's right hand. After arresting both Fewell and his passenger, the trooper searched the vehicle but did not discover any more incriminating evidence.

The State charged Fewell with four crimes: (1) possession or control of opiate, opium, or narcotic drug; (2) criminal use of weapons; (3) possession of drug paraphernalia; and (4) speeding. Fewell filed a motion to suppress, claiming that the trooper's search of Fewell was unreasonable. After conducting an evidentiary hearing, the district court denied Fewell's motion. At the motion hearing, the district court held that Fewell's responses after being handcuffed were inadmissible at trial because of the trooper's failure to give Fewell *Miranda* warnings. Later, at trial, the district court ruled that references to the bent spoon would be excluded, under an oral motion in limine, since the State had only charged Fewell with the pipe as drug paraphernalia. The jury found Fewell guilty on all counts.

*Search of Fewell*

Fewell questions whether the trooper had probable cause to search him since no direct evidence showed he possessed marijuana. In order to answer this question, some fundamental rules of law over search and seizure must be reviewed.

"The Fourth Amendment to the United State Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures, and a warrantless search is per se unreasonable unless it falls within a recognized exception. [Citations omitted.]" Kansas has recognized eight exceptions to the Fourth Amendment search warrant requirement: (1) consent, (2) searches incident to a lawful arrest, (3) stop and frisks, (4) probable cause to search accompanied by exigent circumstances, (5) the emergency doctrine, (6) inventory searches, (7) plain view, and (8)

administrative searches of closely regulated businesses. *State v. Ramirez,* 278 Kan. 402, 404-05, 100 P.3d 94 (2004).

At the suppression hearing, the district court ruled that the trooper's search of Fewell was lawful. After examining the court's rationale in *State v. MacDonald,* 253 Kan. 320, 856 P.2d 116 (1993), and *State v. Thomas,* 28 Kan. App. 2d 70, 12 P.3d 420, *rev. denied* 270 Kan. 903 (2001), where the odor of marijuana provided probable cause for a warrantless search, the district court held that since the trooper had probable cause to search the vehicle based upon the burnt marijuana odor, this probable cause extended to the search of the vehicle's occupants. Accordingly, the district court denied Fewell's motion to suppress.

Our scope of review is clear. "In reviewing a district court's decision regarding suppression, this court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment." *State v. Ackward,* 281 Kan. 2, 8, 128 P.3d 382 (2006).

Under the probable cause to search coupled with exigent circumstances exception, the court must consider (1) the totality of circumstances in determining whether probable cause existed for a search and (2) whether there were exigent circumstances that made it impracticable to obtain a warrant. *Ramirez,* 278 Kan. at 406-07 (citing *United States v. Saucedo-Munoz,* 307 F.3d 344, 351 [5th Cir. 2002], *cert. denied* 537 U.S. 1178 [2003]) (probable cause to search); *State v. Sanders,* 5 Kan. App. 2d 189, 199-200, 614 P.2d 998 (1980) (exigent circumstances).

### *Probable Cause to Search*

Here is the classic definition for probable cause in this context: In the context of a search, probable cause means such information as would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence of the crime may be found on a particular person, in a specific place, or within a specific means of conveyance. See *State v. Mayberry,* 248 Kan. 369, 377, 807 P.2d 86 (1991); *State v. Moore,* 34 Kan. App. 2d 795, 808, 124 P.3d 1054 (2005), *rev. granted* 281 Kan. 1381 (2006)

(review pending on search and seizure issues; case involves fabric softener dryer sheets used as masking agent for illegal drugs).

Here, the trooper encountered three circumstances that led to his belief that he had probable cause to search Fewell: (1) burnt marijuana odor from the vehicle; (2) Fewell's statement that the passenger smoked a blunt; and (3) marijuana found in the possession of the passenger.

Two Kansas cases are instructive. *MacDonald* and *Thomas*. In *MacDonald*, 253 Kan. at 324-25, the court held that marijuana odor, standing alone, provides probable cause to search a vehicle for three reasons. First, *MacDonald* ruled that the "trooper had probable cause to further detain the vehicle when he smelled the marijuana odor." Second, "the odor created the needed particularized suspicion of criminal activity." Third, a number of courts have found that the detection of marijuana odor by an experienced officer can provide probable cause to conduct a warrantless search of an automobile. 253 Kan. at 324-25 (citing *United States v. Padron*, 657 F. Supp. 840, 848 [D. Del. 1987], *aff'd without op.* 857 F.2d 1466 [3d Cir.], *cert. denied* 488 U.S. 974 [1988]). It is important to note that *MacDonald* limited its holding to the facts of the case. 253 Kan. 320, Syl. ¶ 2.

*Thomas*, however, extended *MacDonald's* rationale to include individuals. In *Thomas*, the officer arrested the defendant for an outstanding warrant. While en route to the detention center, the officer smelled marijuana emitting from the defendant. At the detention facility, the officer advised the jail personnel of the odor, and, as a result, the defendant was strip searched and a baggie of cocaine was found.

*Thomas* recognized that the Kansas courts failed to address "whether the mere odor is sufficient to establish probable cause to search a person." 28 Kan. App. 2d at 73-74. Nonetheless, the court reviewed *MacDonald* and its citation to *Padron*, noting that the odor of marijuana was sufficient to establish probable cause. Therefore, the court held that since there was "already existing Kansas precedent for the conclusion that the odor of marijuana can form the basis for probable cause," it could also "be reasonably concluded that the odor of marijuana on a person in custody, *coupled*

*with the detention facility's recognized security interest* in preventing the introduction of such contraband within its walls, is sufficient to establish probable cause to strip search" the defendant. (Emphasis added.) 28 Kan. App. 2d at 74.

We note, in passing, that *State v. Anderson*, 34 Kan. App. 2d 375, 388, 392, 119 P.3d 1171 (2005), *aff'd* 281 Kan. 896, 136 P.3d 406 (2006), held that finding marijuana on the passenger of the vehicle, standing alone, does not constitute reasonable suspicion to further detain the driver or probable cause to arrest the driver unless the officers can directly link the driver to drug activity. This case is distinguishable from *Anderson* in that the officers in *Anderson* did not detect marijuana odor in the vehicle prior to searching the driver. Instead, the officers discovered marijuana on the passenger after a pat down and used that evidence as a reason to further detain the driver.

We think the holding in *MacDonald* can be extended to the facts of this case. First, the smell of marijuana gave the trooper probable cause to further detain the vehicle, including Fewell as the driver of that vehicle. Second, the odor created the officer's suspicion that marijuana use had been committed and that such evidence might be found on the driver, especially since the odor was burnt, compared to fresh, and that Fewell admitted that his passenger had smoked a blunt. Here, the trooper was experienced in detecting marijuana odor through his 11 years of law enforcement experience. Consequently, under the circumstances of this case, there was probable cause to search the driver based on the detection of burnt marijuana odor emanating from the vehicle.

The dissent is not convinced that the trooper had probable cause to search Fewell. The dissent reasons that since the passenger failed to implicate the driver, there was no reason to search the driver. The dissent opines that the trooper is required to believe the passenger. But probable cause here is based on more evidence than the statement of a passenger. For this is the same passenger that said, "[i]t's all gone, I smoked it," yet he was found with three bags of marijuana on his person and $1,000. That does not appear to be credible.

The dissent also ignores the fact that the trooper first learned about the blunt from Fewell. He admitted to the trooper that he knew his passenger was smoking marijuana while he was driving. The burnt smell gave the trooper an immediacy to the timing of the criminal acts. After hearing Fewell's admission and knowing the results of his search of the passenger, a reasonable officer with 11 years experience would have probable cause to search the driver's person for contraband, especially in light of the exigent circumstances that existed here.

### Exigent Circumstances

In this context it has been held that "[e]xigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband. In each case, the particular facts must be considered. [Citation omitted.]" *State v. Houze*, 23 Kan. App. 2d 336, 337, 930 P.2d 620, *rev. denied* 261 Kan. 1088 (1997).

The *Houze* court focused on whether exigent circumstances could support a warrantless search of a person after that person got out of a vehicle. *Houze* did determine that the trial court's finding of exigent circumstances was reasonable because the evidence would have likely been lost or destroyed had the defendant been able to proceed into the residence. They were exigent circumstances because (1) there was probable cause that the evidence might be located on the person and (2) there was a probable loss of evidence in waiting for a search warrant to be executed. 23 Kan. App. 2d at 339-40.

The same reasoning applies here. The trooper was alone at the stop; if the trooper had sought a warrant, there would have been probable loss or destruction of evidence. Fewell does not argue that this assumption is untrue even though when left alone at the rear of the vehicle for at least 6 minutes, he had not disposed of any evidence. Nonetheless, the trooper performed the search only after Fewell had requested to leave to pick up the passenger's girlfriend. Therefore, because of the possible loss of evidence in permitting Fewell to leave while waiting for a warrant to be obtained,

we think exigent circumstances existed to support the warrantless search of Fewell.

Accordingly, since the trooper had probable cause to search Fewell and there were exigent circumstances to support the warrantless search, the district court did not err in denying the motion to suppress.

## Other Claims of Error

Fewell argues that the State committed prosecutorial misconduct in two instances. He also avers that cumulative trial errors prejudiced his right to a fair trial. Finally he also claims that the State did not properly prove his criminal history.

## Prosecutor Conduct

First, Fewell claims that the prosecutor's line of questioning compelled the trooper to comment on Fewell's credibility. Second, Fewell asserts that the prosecutor made reference to evidence that had been excluded and thus prejudiced the jury against him. In addition, Fewell argues that the above misconduct cumulatively denied him a fair trial.

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Swinney*, 280 Kan. 768, 779, 127 P.3d 261 (2006).

The cases are clear on this point. "A witness may not express an opinion on the credibility of another witness." *State v. Elnicki*, 279 Kan. 47, 53, 105 P.3d 1222 (2005). "Questions which compel a defendant or witness to comment on the credibility of another witness are improper. It is the province of the jury to weigh the credibility of the witnesses." *State v. Manning*, 270 Kan. 674, 698, 19 P.3d 84 (2001).

Fewell contends that the following exchange compelled the trooper to testify that Fewell was a liar:

"Q. [State]: How did you confront him?

"A. [Trooper]: I told him I smelled—I said, 'What's with the marijuana in your vehicle?'

"Q.: And what was his response, initial response?

"A.: He initially acted like there was no odor, that I was just, I guess, smelling things.

"Q.: Did you have a response to that?

"A.: Yes. Ah, I—I told him that obviously I'm smelling this, there is obviously a smell of marijuana in the vehicle, and this can go one of two ways.

"Q.: Okay. Fair to say—well, let me ask you. Were you angry when he indicated he didn't know anything about the smell?

"A.: It's not anger, I would say it's just kind of frustration.

"Q.: Explain that for the jury.

"A.: Well, I have been doing this for [11] years. I have been around marijuana and burnt marijuana and drugs during that time. Ah, I know what the odor is, there is no other odor like it, it is a distinct odor, and it just never fails to amaze me when people will say what, what are you talking about, I don't know what that is type thing, so it's more of an exasperation, frustration. *People will lie about something just so simple.*

"Q.: And did you indicate to him—you said you indicated to him it could go one of two ways?

"A.: Yes." (Emphasis added.)

These facts are greatly different from *Elnicki*. In *Elnicki*, the jury viewed a videotape confession that contained the comments from a detective on the defendant's veracity. In the videotape, the detective commented eight times that the defendant was a "liar," was " 'bullshitting' " him, " 'weaving a web of lies,' " and that the defendant's shifting eyes illustrated that he was lying. As a result, the court held that the detective's statements were improper and that this and other prosecutorial misconduct prejudiced the jury against the defendant. Importantly, the court stated that this issue could have been rectified had the detective testified in court and pointed out the inconsistencies of the defendant's stories without the added negative comments. 279 Kan. at 57.

First, the trooper's isolated reference did not rise to the level in *Elnicki* where the detective repeatedly commented on the defendant's veracity. Second, the trooper's comment focused on a generality, while the detective's comments were made directly against Elnicki. Third, as *Elnicki* suggested, the trooper testified in court,

explaining the inconsistencies in Fewell's story regarding the marijuana odor.

We think the trooper essentially expressed his opinion that people lie about having burnt marijuana odor in their car, and in the context of the questioning, it could be construed that the trooper's comment was directed against Fewell. Nevertheless, even with that interpretation, this comment did not constitute plain error. Following the trooper's comment, the trooper testified that Fewell admitted to him that his passenger smoked a blunt. Moreover, the trooper testified that upon questioning the passenger, the passenger stated that there was no marijuana in the car because he had smoked it. Therefore, the trooper's comment did not prejudice the jury against the defendant to deny him a fair trial since evidence was presented during the same testimony, showing that Fewell had lied about having burnt marijuana odor in the car. This is not prosecutor misconduct.

### Bent Spoon Evidence

The district court granted Fewell's oral motion in limine to preclude any statements about the bent spoon. Fewell argues that the State violated this order by referencing to this item twice during trial. First, Fewell points to the following comment as being prejudicial:

"Q. [State]: Did you recover any *items that later led to charges in this case?*
"A. [Trooper]: Yes.
"Q.: And describe those items that led to the charges in this case.
"A.: There was a switchblade knife with a three-and-three-quarter-inch blade, there is a glass pipe—I'm sorry.
"Q.: No, keep going.
"A.: I'm getting ahead of myself. —a glass pipe that's used for smoking various types of illicit, illegal drugs, and there was a small bag containing a rock of what was later identified as crack cocaine." (Emphasis added.)

Here, it is difficult to see how the State violated the order in limine. Each item that the trooper described fell within counts 1, 2, and 3. First, the item of crack cocaine supported the charge of possession of opiate, opium, or narcotic drug. Second, the glass pipe supported the charge of possession of drug paraphernalia.

Third, the switchblade knife supported the charge of criminal use of weapons. Accordingly, the State did not elicit testimony that could be interpreted to be referencing the bent spoon. Therefore, the defendant has failed to demonstrate that the State violated the order in limine.

### Comments About Video

Fewell states that the following comments about the video were prejudicial:

"Q. [State]: Just one or two more brief questions. As to the video, you have had an opportunity to review that video, is that correct?
"A. [Trooper]: Yes.
"Q.: And *there has been some adjustments made to that video, is that correct, due to rulings in this case?*
"A.: Yes.
"Q.: Absent those adjustments, is that video an accurate description and depiction of the events that occurred that night?
"A.: Yes." (Emphasis added.)

The defendant has failed to show that these comments were prejudicial. First, the State's comments appear to be laying foundation for the redacted tape to be later entered at trial. Second, the district court, itself, informed the jury that it had ruled that adjustments to the videotape had to be made.

In *State v. Kemp*, 30 Kan. App. 2d 657, 663, 46 P.3d 31 (2002), the court held an adequate foundation for the admission of a videotape requires testimony that the tape accurately represents the events presented and that testimony that an admitted copy is identical to the original videotape is insufficient. Here, it appears that the State was attempting to lay the foundation of the redacted videotape to be admitted later in the trial, and in order to comply with *Kemp*, the State had to comment that the videotape had been adjusted.

This assumption is proper because prior to entering the redacted videotape at trial, the State claimed that "the trooper testified to the basis of having it admitted." Furthermore, the district court informed the jury that "there ha[d] been some parts of this excised, so basically that's pursuant to the Court's ruling." Consequently,

Fewell fails to demonstrate that the State violated the order of limine or that the testimony substantially prejudiced him. There is no prosecutorial misconduct here.

### No Cumulative Trial Error

Since none of Fewell's arguments concerning trial errors are convincing, there are no cumulative errors to assess.

### Criminal History Score

Fewell argues that the district court erred in failing to require his prior convictions to be in the complaint and put before a jury to be proven beyond a reasonable doubt. The Kansas Supreme Court has held that including prior criminal convictions in the defendant's criminal history score is constitutional, meaning that they do not have to be presented in the complaint or decided by a jury. Furthermore, increasing a sentence based on the fact of prior convictions does not violate *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002). The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). There has been no departure indicated by the court, and Fewell's argument fails.

Affirmed.

GREENE, J., dissenting: I respectfully dissent, conceding that the undisputed facts of this appeal present a close and difficult question. Where there is no dispute as to the material facts and the legality of the search is a pure legal question under the Fourth Amendment to the United States Constitution and related statutory restrictions, I believe an appellate court must be convinced that the State has born its substantial burden of proving the lawfulness of the search and seizure; thus, I believe that extremely close cases must be resolved against the State. See *State v. Shelton*, 278 Kan. 287, 292, 93 P.3d 1200 (2004).

I would initiate an analysis of the legality of the pat-down search of Fewell with an emphasis on some black-letter principles of Fourth Amendment jurisprudence. Probable cause to search an automobile does not automatically warrant the search of an occupant of the automobile. *State v. Boyd*, 275 Kan. 271, 276-78, 64 P.3d 419 (2003) (citing *United States v. Di Re*, 332 U.S. 581, 586, 92 L. Ed. 210, 68 S. Ct. 222 [1948]). The search or seizure of a person must be supported by probable cause particularized to that person and cannot be avoided by simply pointing out that there is probable cause to search or seize another person. *State v. Anderson*, 34 Kan. App. 2d 375, 390, 119 P.3d 1171 (2005), *aff'd* 281 Kan. 896, 904-06, 136 P.3d 406 (2006) (Court of Appeals opinion quoted with approval citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 [1979]). Exigent circumstances may not be used to support a determination of probable cause to search. *State v. Ibarra*, 282 Kan. 530, 553, 147 P.3d 842 (2006). In fact, there must be a clear showing of probable cause that evidence might be located on a person as a condition precedent for exigent circumstances to support a warrantless search of that person. See *State v. Huff*, 278 Kan. 214, 219-21, 92 P.3d 604 (2004); *State v. Houze*, 23 Kan. App. 2d 336, 337-40, 930 P.2d 620, *rev. denied* 261 Kan. 1088 (1997).

Here, there is no challenge to the stop of Fewell's vehicle; the initial basis for the stop (speeding) and the odor of marijuana emanating from the window of the vehicle on the passenger side justified an initial investigatory detention of Fewell as the driver of the vehicle. That initial detention was characterized by the officer as "cooperative" and apparently consisted of significant conversation with Fewell. Notably, the officer did not indicate any concern for his safety throughout this encounter, nor did the officer indicate any independent detection of burnt marijuana odor emanating from Fewell's person. During the conversation, Fewell implicated his passenger as the source of the burnt marijuana odor, and this justified the subsequent detention, conversation, search, and arrest of the passenger. With regard to the burnt marijuana odor, the passenger admitted, "[I]t's all gone, I smoked it." Despite extensive conversation with the passenger, however, the record fails to in-

dicate that the passenger in turn implicated Fewell in any criminal activity whatsoever.

After the arrest of the passenger, the officer returned to Fewell and conducted the pat-down search, again without indicating that there was any concern for his safety. After finding a knife in one of Fewell's pockets, the officer emphasized its "danger," but this does not support any reasonable belief by the officer that his personal safety required such search at its inception, nor did the district court so hold. Apparently, neither the majority nor I view the search as justified based on a reasonable concern for officer safety, nor should we. See *State v. Davis*, 28 Kan. App. 2d 75, 81, 11 P.3d 1177 (2000), *rev. denied* 270 Kan. 900 (2001).

At the point in the encounter where the officer decided to conduct a search of Fewell's person, we must analyze any and all factors supporting probable cause that Fewell had engaged in criminal activity. As noted by the majority, these are: (i) the initial odor of marijuana emanating generally from the passenger side window of the vehicle; (ii) the admission of the passenger that he had smoked a "blunt" containing marijuana; and (iii) the fruits of the search of the passenger including three packages of marijuana. Can it be said that any of these factors caused any initial suspicion of Fewell's involvement in criminal activity to "ripen" into probable cause? I respectfully suggest that the answer is clearly no because the course of the investigation led conclusively to the source of the burnt marijuana odor as the passenger. In fact, I note that it was never suggested by the officer that there was any marijuana odor emanating from Fewell's side of the vehicle, from Fewell's person, or from Fewell's breath, nor was there any suggestion that Fewell had engaged in any illegal activity other than speeding. Fewell had proven cooperative, candid, and credible in assisting the officer to ascertain the source of the marijuana odor.

I would simply not reach any exigent circumstances analysis due to the lack of particularized probable cause that Fewell had engaged in any criminal conduct. Reasonable suspicion is a less demanding standard than probable cause; probable cause demands information that is more substantial in quantity or content and, generally, requires a higher degree of reliability. See *Alabama v.*

*White,* 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990). Here, the investigation resulted in *lessening* any suspicion that Fewell was involved in criminal activity; there was certainly no additional qualitative or quantitative evidence of his involvement. Just as in the *Anderson* opinions, in Kansas any reasonable suspicion at the inception of the stop that Fewell had been involved in criminal activity should have been lessened by the conclusive discovery of the source for the incriminating odor. Where there has been a singling out or incrimination of the other occupant of the car, coupled with nothing to link Fewell to the criminal activity or to show that both occupants were involved in a common enterprise of drug activity, there was no particularized probable cause to search the person of Fewell. See *Anderson,* 281 Kan. at 904-07. "[A] person's mere propinquity to other independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" *Ybarra,* 444 U.S. at 91 (citing *Sibron v. New York,* 392 U.S. 40, 62-63, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968) *quoted and cited* in *Anderson,* 281 Kan. at 905-06).

Departing from the district court's analysis and the majority opinion, I disagree that either *State v. MacDonald,* 253 Kan. 320, 856 P.2d 116 (1993) or *State v. Thomas,* 28 Kan. App. 2d 70, 12 P.3d 420, *rev. denied* 270 Kan. 903 (2001), is controlling or instructive here. *MacDonald* merely supports the principle that the odor of marijuana, standing alone, justifies search of a vehicle; the case does not support the notion that such odor emanating from the vehicle supports probable cause to search the occupants of that vehicle. *Thomas* addressed a situation where the odor emanated from an individual in custody, and his search was justified in part by a detention facility's recognized security interest in preventing introduction of contraband into the facility. Because of their significant factual disparities, I would not rely on such cases here, and I respectfully suggest that the district court's exclusive reliance on these cases to justify the search of Fewell was error.

Finally, I recognize that many other jurisdictions have held that mere odor of marijuana emanating from a vehicle supports probable cause to search the occupants of the vehicle. See, *e.g., State v. Moore,* 90 Ohio St. 3d 47, 52-53, 734 N.E.2d 804 (2000), *cert.*

*denied* 532 U.S. 908 (2001). Nevertheless, our Supreme Court has yet to so hold. Indeed, I fear that the majority opinion in this appeal will be cited as endorsing such a rule in Kansas, when the facts here do not merit such a broad interpretation of the majority's opinion. I share the sentiments of the dissenters from other jurisdictions who have expressed concern that allowing unrestricted warrantless searches of individuals based on the uncorroborated detection of a general marijuana odor from a vehicle may open the door for government abuse. See, *e.g., Moore*, 90 Ohio St. 3d at 54 (Pfeifer and Douglas, JJ., dissenting in part); *People v. Stout*, 106 Ill. 2d 77, 88-90, 477 N.E.2d 498 (1985) (Simon, J., dissenting).

I would conclude that the district court erred in denying Fewell's motion to suppress, thus requiring that this court reverse his conviction.