No. 115,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIFFANY S. HADLEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

In reviewing the granting or denial of a motion to suppress evidence, an appellate court determines whether the factual findings underlying the trial court's suppression decision are supported by substantial competent evidence. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. The appellate court does not reweigh the evidence or reassess the credibility of the witnesses.

2.

When analyzing the totality of circumstances within a law enforcement officer's knowledge to assess whether probable cause exists, an appellate court will consider all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.

3.

The Fourth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment, establishes the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches. Section 15 of the Kansas Constitution Bill of Rights provides identical protection.

1

4.

A warrantless search is per se unreasonable, and the fruits of that search are inadmissible, unless the search falls within one of the established exceptions to the search warrant requirement. Those exceptions are consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.

5.

When probable cause and an exigent circumstance are present, a law enforcement officer may perform a warrantless search of a person without violating the Fourth Amendment to the Constitution of the United States. The State bears the burden to show that a warrantless search was lawful.

6.

Probable cause exists where the totality of the facts and circumstances within the acting law enforcement officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

7.

In the context of search and seizure law, probable cause is the reasonable belief that there is a fair probability that the place to be searched contains contraband or evidence of a crime. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.

8.

When analyzing the totality of circumstances to determine if a law enforcement officer had probable cause to believe that a person possessed marijuana, the smell of

burning or burnt marijuana by an experienced law enforcement officer is a significant circumstance to be considered.

9.

Probable cause is not an exact science, but rather is based on the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.

10.

Under the totality of circumstances present in this warrantless search based on probable cause with exigent circumstances—including the very strong odor of burning and burnt marijuana detected by experienced law enforcement officers emanating from the passenger compartment of the vehicle in which the defendant was driving; the smell of burnt marijuana coming from the defendant personally; the fact that prior to the search of the defendant all other places for the marijuana to be located had been searched without finding the drug; and the defendant's failure to dim her vehicle's headlights upon repeatedly being alerted by officers to her unsafe driving, which suggested inattentiveness due to the effects of smoking marijuana—the officers had knowledge, based on trustworthy information, to warrant a person of reasonable caution in the belief that the offense of possession of marijuana was being committed, and a reasonable belief in the fair probability that defendant personally possessed the marijuana.

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed December 22, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

3

Before BUSER, P.J., PIERRON and STANDRIDGE, JJ.

BUSER, J.: Tiffany S. Hadley appeals her felony conviction for possession of marijuana after a prior conviction. She contends this conviction should be reversed because the district court erred in denying her motion to suppress evidence of the marijuana. In particular, Hadley asserts that law enforcement officers violated her rights under the Fourth Amendment to the Constitution of the United States when, subsequent to a traffic stop, an officer searched her without a warrant and without probable cause which led to the discovery of the marijuana hidden in her undergarment.

Applying the legal principles articulated by our Supreme Court in *State v. Fewell*, 286 Kan. 370, 379, 184 P.3d 903 (2008), to the unique facts of this case, we hold that under the totality of circumstances, the officers had probable cause to believe that Hadley personally possessed marijuana, which fulfilled an essential requirement of the probable cause with exigent circumstances exception to the Fourth Amendment. Finding no error in the district court's denial of Hadley's motion to suppress evidence, we affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2014, the State charged Hadley with possession of marijuana after a prior conviction in violation of K.S.A. 2013 Supp. 21-5706(b)(3) and (c)(2)(B), a severity level five, nonperson, drug grid felony. After a preliminary hearing and arraignment, Hadley filed a motion to suppress evidence of the marijuana found in her undergarment during the traffic stop. In particular, she alleged "there were no grounds to make the stop and it was unlawful." Alternatively, without identifying the constitutional basis upon which the search and seizure was illegal, Hadley claimed that "[t]he defendant's person was unlawfully searched. Anything found during the illegal search must be suppressed."

4

On August 27, 2015, by agreement of the district court and the parties, an evidentiary hearing on Hadley's motion to suppress was conducted as part of the bench trial on the complaint. The State presented testimony from three Wichita Police Department officers: Officer Donald Moore, Officer Michael Russell, and Officer Alli Larison. The defense presented testimony from Hadley and her passenger, Carlos Love. The following is a summary of the evidence presented by the parties at the evidentiary hearing.

About midnight on August 18, 2013, Officer Russell was driving his marked patrol vehicle in a southerly direction on North Minnesota Street in Wichita. At that time, Officer Moore was also on duty and seated in the front passenger seat. The officers observed a Pontiac convertible traveling northbound on North Minnesota Street approaching their patrol vehicle with its bright headlights illuminated. According to Officer Moore, the officers discussed that "the lights were really bright and [Officer Russell] had flashed the lights at them and they didn't take the lights down to dim." Officer Russell described the oncoming headlights as "extremely bright." He testified, "To get the bright lights to turn off, I was flashing my lights at them. That did not work. Then I used my spotlight, flashed it at them, turn it off, they still did not turn off the bright lights as they were approaching us." According to Officer Moore, the failure to dim the bright headlights was a violation of K.S.A. 8-1725.

As the oncoming Pontiac passed the police vehicle, Officer Moore, who had his passenger-side window down, smelled the odor of marijuana. For his part, Officer Russell, who had his driver-side window down at the time, testified, "When the vehicle passed by, then I could smell the strong [odor] of burned marijuana. I advised my partner that the vehicle smelled like marijuana when it drove by."

Officer Russell made a U-turn and began to pursue the Pontiac northbound on North Minnesota Street. At that time, it appeared the vehicle's tag light was not

5

illuminated. While the officer pursued the Pontiac, Officer Russell noted that "you could still smell the marijuana coming from the vehicle." Similarly, Officer Russell's report memorialized that "when we were following the vehicle from 2400 North Minnesota to the location of the stop I could smell a strong odor of marijuana." The Pontiac was finally stopped at the intersection of 25th and Poplar Street. It was described as a convertible with its windows down.

After the Pontiac stopped, Officer Moore left his patrol vehicle and as he approached the passenger's side of the Pontiac he noticed "a very strong odor of marijuana." The officer further described the odor as "pretty recent. The burned marijuana smell, it's recent, is very fresh." Officer Moore asked the passenger, Love, to step out of the Pontiac. Although the officer smelled an "overall odor" of marijuana about Love, he could not testify whether this odor came from the passenger. Officer Moore conducted a pat-down search of Love "[t]o determine if there was any marijuana on that person, and that is where the odor could have been coming from." No marijuana was found.

While Officer Moore was interacting with Love, Officer Russell contacted the driver, Hadley. At this initial contact, the officer observed the driver-side window down and he "could smell the marijuana from inside the vehicle." Officer Russell obtained Hadley's driver's license and personal information and asked her to step out of the vehicle. "Because of the odor of marijuana coming from the vehicle," the officer then searched the interior of the Pontiac looking for the marijuana. Asked to describe the odor, Officer Russell testified, "To me it smelled like a fresh smell. It smelled like someone was smoking marijuana when they drove past us, and as we were following the vehicle, it smelled like marijuana was coming from the vehicle, like they were smoking marijuana in the vehicle." The officer also clarified, "You could smell marijuana coming from [Hadley], both occupants from the car, and from the car."

6

Prior to the vehicle search, Officer Russell requested that a female officer come to the scene because "[i]f I did not find any marijuana in the vehicle, I wanted a female officer to pat her down, see if the marijuana was on her." Despite his search of the Pontiac's passenger compartment, the officer did not find any marijuana.

Officer Larison arrived at the scene to conduct a search of Hadley. The officer patted down the front of her dress and "felt a bulge in the front part of her underwear" which she thought was marijuana or some other drugs. The officer reached inside Hadley's underwear and recovered a baggy of marijuana.

Officer Russell placed Hadley under arrest, handcuffed her, and placed her in the back seat of his patrol vehicle. After she waived her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Hadley provided the officer with an incriminating statement.

For purposes of the motion to suppress hearing only, the defense presented testimony from Hadley and Love. Hadley testified that when she was driving on August 18, 2013, she did not have her bright lights illuminated, and her tag light was working properly. Hadley did not recall receiving any traffic citations as a result of the traffic stop. She testified the baggie of marijuana was found between her legs and partially inside her vagina. Hadley admitted she was under the influence of marijuana that evening and that she had smoked "a little bit" of a rolled up joint of marijuana in the Pontiac.

Love testified that Hadley had been his girlfriend for 15 years. On the evening of the traffic stop while he was riding in Hadley's car, the bright lights were not illuminated and the tag light was operational. Love indicated that after the officer flashed the patrol vehicle's lights at the Pontiac, he did not see Hadley try to adjust the knob that controlled the headlights. Love recalled taking "a couple hits" of marijuana about an hour before the traffic stop and admitted that he felt the effects of the drug at that time. However, Love

specifically denied that Hadley ever smoked marijuana inside the car prior to the traffic stop.

In closing argument regarding the motion to suppress, Hadley's counsel highlighted the defense testimony that the Pontiac's headlights were not on bright and the tag light was working, therefore, the traffic stop was unlawful and the marijuana seized from Hadley should be suppressed. Alternatively, defense counsel claimed that Officer Larison's pat-down of Hadley's dress prior to removing the contraband from her underwear was a violation of the stop and frisk procedures enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), because there was "no testimony that it was done for the safety of the officers."

In its ruling, the district court questioned the credibility of Hadley and Love. In particular, the district court observed:

> "As far as the weight and credibility of the witnesses, Mr. Love and Ms. Hadley testified inconsistently. Mr. Love said they weren't smoking in the car. Ms. Hadley said she was smoking in the car and was smoking a joint. That would be consistent with the officer's smell of marijuana emanating from a vehicle on a summer evening with the windows rolled down."

The district court also adopted the officers' testimony regarding Hadley's traffic offense of failure to dim headlights. In particular, the district court found "the officer[] flashed not only his brights, but his spotlight at the car and the car didn't respond, either by flashing brights to indicate they had their dims on or doing anything to indicate other than the bright lights were the brights."

The district court summarily disposed of defense counsel's stop and frisk argument, noting that while there was no evidence the pat-down of Hadley was conducted to search for weapons,

8

"the officers said they smelled the odor of marijuana, both as they passed the car and as they turned around and followed the car and as they approached the car, and the video shows the windows down, they could smell what they described as freshly burned marijuana. So the search of the individuals is not just for officer safety. It's to discover the fruits or instrumentalities of a crime they are investigating, which is the possession of marijuana."

In conclusion, the district judge denied Hadley's motion to suppress evidence stating:

"I will find that the traffic stop for the bright lights and then the further investigation of the fruits and instrumentalities of the crime of possession of marijuana based upon the odor emanating from the vehicle and the patdown search, not a *Terry* [search] for officer safety, but to investigate the possession of the drugs and the feeling of a bulge or bump in the front of the defendant's underwear consistent with being drugs was a valid search and was not unreasonably intrusive."

With regard to the bench trial, the district court found Hadley guilty of felony possession of marijuana after a prior conviction. She was sentenced to a 12-month term of probation with an underlying prison sentence of 11 months. Hadley filed this timely appeal.

## WARRANTLESS SEARCH BASED ON PROBABLE CAUSE WITH EXIGENT CIRCUMSTANCES

Hadley's principal argument on appeal is that the "warrantless search of the defendant based on the odor of marijuana alone was unlawful." This argument is predicated on the notion that the "odor of marijuana alone is insufficient probable cause to search a person."

In evaluating this issue, our standards of review provide:  In reviewing the granting or denial of a motion to suppress evidence, the court determines whether the factual findings underlying the trial court's suppression decision are supported by a substantial competent evidence standard. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. The appellate courts do not reweigh the evidence or reassess the credibility of the witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

On appeal, Hadley does not challenge any of the district court's factual findings material to the evaluation of this search and seizure question. As noted earlier, the district court generally adopted the law enforcement officers' testimony regarding the reason for the traffic stop, their actions in searching Love, the Pontiac, and Hadley, and their detection of the strong odor of burning and burnt marijuana at various times during the pursuit and traffic stop.

Our independent review of the transcript of the motion to suppress hearing confirms that the law enforcement officers' testimony established the factual findings which the district court found were material to its ruling denying the motion to suppress evidence. Accordingly, the issue presented—whether the district court erred in its ruling that the officers had probable cause to conduct a warrantless search of Hadley for marijuana—is a question of law over which our court has unlimited review. 304 Kan. at 274.

We begin our analysis with a statement of what issues are *not* presented for our review. On appeal, Hadley does not reprise the argument she made in the district court that the initial traffic stop was invalid. Additionally, she does not contend the warrantless searches of her car or Love were violative of the Fourth Amendment to the United States Constitution. Finally, Hadley does not contest that exigent circumstances were present at the time she was personally searched without a warrant by Officer Larison. Because

10

Hadley has not raised these issues on appeal, they are deemed waived and/or abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016); *State v. Adams*, 283 Kan. 365, 367, 153 P.3d 512 (2007) (as a general rule, absent exceptional circumstances, appellate courts do not consider issues on appeal that were not raised by the parties). Accordingly, we will not consider or rule on these related matters which Hadley has not raised on appeal.

Several well-known constitutional precepts provide the foundation for our search and seizure inquiry. The right of the people to be secure in their person against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. *State v. Howard*, 305 Kan. 984, Syl. ¶ 2, 389 P.3d 1280 (2017). Under the judicially created exclusionary rule, evidence obtained by an illegal search or seizure in violation of this right may not be admitted into evidence. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

> "A warrantless search is per se unreasonable, and the fruits of that search inadmissible, unless the search falls within one of the established exceptions to the search warrant requirement. Those exceptions are consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses." *Howard*, 305 Kan. 984, Syl. ¶ 3.

In this case, the State justified the warrantless search of Hadley based on the exception for probable cause with exigent circumstances. When probable cause and exigent circumstances are present, a law enforcement officer may perform a warrantless search of a person without violating the Fourth Amendment. The burden to show that a warrantless search was lawful is upon the State. *State v. James*, 301 Kan. 898, 908, 349 P.3d 457 (2015).

Since the gravamen of Hadley's appeal is that there was insufficient probable cause to justify Officer Larison's search of Hadley, we next consider what constitutes probable cause in cases wherein a person is searched without a warrant based, in whole or in part, on the odor of marijuana.

Probable cause exists where the totality of the facts and circumstances within the acting law enforcement officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. *Fewell*, 286 Kan. 370, Syl. ¶¶ 4-5.

In the context of search and seizure law, probable cause is the reasonable belief that there is a fair probability that the place to be searched contains contraband or evidence of a crime. *Florida v. Harris*, 568 U.S. 237, 243, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013); *State v. Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 2, 272 P.3d 34 (2012). When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004).

As mentioned earlier, because in the district court and on appeal Hadley did not dispute the presence of exigent circumstances in this case, the only issue to be considered is whether the warrantless search of Hadley was supported by probable cause. However, it should be noted, that exigent circumstances require a law enforcement officer to have a reasonable belief that there is a threat of imminent loss, destruction, removal, or concealment of the evidence or contraband. *Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 3.

Odors released from marijuana have frequently been the subject of our search and seizure jurisprudence. For example, an officer's detection of the odor of burned marijuana, standing alone, emanating from inside a motor vehicle is sufficient to establish probable cause for the warrantless search of the vehicle. See *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993) ("The marijuana odor provided the basis for the suspicion that a crime had been committed and that evidence in connection with the crime was located within the automobile."). As later noted by our Supreme Court: "The rationale for that definitive rule was that, in this state at that time, the smell of marijuana was *always* evidence of illegal activity." *State v. Stevenson*, 299 Kan. 53, 58-59, 321 P.3d 754 (2014); see also *State v. Goff*, 44 Kan. App. 2d 536, 539, 239 P.3d 467 (2010) ("The smell of raw marijuana alone is sufficient to give an officer both reasonable suspicion and probable cause [to search a vehicle].").

With regard to whether the smell of burned marijuana emanating from a private residence, standing alone, is sufficient to establish probable cause, our Supreme Court has surveyed several states and concluded that, as a general rule, "something more than 'plain smell' is required." *State v. Huff*, 278 Kan. 214, 221, 92 P.3d 604 (2004). Still, the Supreme Court has observed "this question is unsettled in Kansas." 278 Kan. at 222.

Hadley contends that no Kansas appellate court has ruled that an officer who simply senses the odor of marijuana coming from an individual has probable cause to justify a warrantless search of that person to seize marijuana. For its part, the State acknowledges that in Kansas, the odor of marijuana alone has not been sufficient for a finding of probable cause to search a person for the drug. We agree.

The State invites our court, however, to adopt such a rule of law citing a myriad of other states that have allowed the search of a person when the officer detects the smell of marijuana coming from that person or the vehicle in which they were sitting at the time of the encounter. Among the examples cited by the State are *State v. Mathews*, 597 So. 2d

13

235, 237 (Ala. Crim. App. 1992) (an officer's detection of the odor of marijuana may provide probable cause to search or to arrest); *State v. Williams*, 967 So. 2d 941, 943 (Fla. Dist. App. 2007) (the odor of burnt cannabis emanating from a vehicle constituted probable cause to search all occupants of that vehicle); *State v. Chambliss*, 752 So. 2d 114, 115 (Fla. Dist. App. 2000) ("the odor of burning marijuana alone provided probable cause to search the defendant").

We decline the State's offer to embark on a new legal proposition that would allow Kansas law enforcement officers to search a person simply because there was an odor of marijuana about that person. Instead, we will evaluate whether Officer Larison's search of Hadley was lawful based on our Supreme Court's precedent set forth in *Fewell*, 286 Kan. at 379. In *Fewell*, our Supreme Court found probable cause for the warrantless search of a defendant when the odor of marijuana, in addition to other circumstances, was sufficient to warrant the officers' reasonable belief that Fewell possessed illegal drugs. 286 Kan. at 384. Given the importance and relevance of *Fewell* to the resolution of the issue on appeal, an extended discussion of the opinion is warranted.

In *Fewell*, the driver, Ramon Fewell, was searched without a warrant after a traffic stop because, among other circumstances, the officer detected an odor of burnt marijuana coming from inside the vehicle. The material facts of the case were summarized by our Supreme Court:

> "On the evening of March 18, 2003, Trooper Mark Engholm observed a Chevrolet Blazer traveling at 80 miles per hour southbound on U.S. Highway 75 in Shawnee County; the posted speed limit on the highway was 70 miles per hour. Trooper Engholm activated his emergency lights and initiated a traffic stop.
> "After the Blazer and the patrol car pulled on to the shoulder, Trooper Engholm approached the vehicle on the passenger side. As he approached the Blazer, he noticed a strong odor of burnt marijuana emanating from the vehicle's passenger compartment.

14

"Once Engholm was at the passenger-side window, he informed the driver, Fewell, and the passenger, Charles Brown, of the reason for the traffic stop. He asked Fewell to exit the vehicle and step to the rear of the Blazer; he also asked Fewell about the smell of burnt marijuana. Fewell initially stated that he did not detect any such odor; however, he later stated that Brown had been smoking a 'blunt.' Engholm knew from his experience that a blunt was a hollowed-out cigar that had been filled with marijuana.

"Trooper Engholm instructed Fewell to sit on the back bumper of the Blazer while the trooper spoke with Brown. Brown initially denied having marijuana, but he eventually told Engholm that he had previously had marijuana but that it was all gone because he had smoked it. The trooper then searched Brown and found three bags of marijuana and $1,000 in cash. Engholm subsequently arrested Brown and placed him in the passenger seat of the patrol car.

"Once Brown was in the patrol car, Trooper Engholm returned to Fewell. Fewell asked Engholm if he could leave because he had to go pick up Brown's girlfriend. Engholm reminded Fewell that he still had Fewell's driver's license and asked Fewell whether he had 'anything' on him. Fewell responded that he did not.

"Engholm then began a pat-down search of Fewell's person. Engholm found a switchblade knife in the right front pocket of Fewell's pants and a bent spoon and glass pipe in his left front pocket. The trooper asked why Fewell carried these items, and Fewell responded that he 'dabbles in cocaine.' Engholm then handcuffed Fewell and waited until another officer arrived at the scene before continuing his search of Fewell. After back-up arrived, Engholm finished his search wearing Kevlar gloves; this search revealed a small bag of crack cocaine clenched in Fewell's right hand." 286 Kan. at 372-73.

Fewell was charged and convicted of possession of cocaine, criminal use of a weapon, possession of drug paraphernalia, and speeding. Prior to trial, the district court denied Fewell's motion to suppress the contraband "finding that the odor of the marijuana provided probable cause to search the vehicle and its occupants and that the lack of a warrant was justified by exigent circumstances." 286 Kan. at 373. The Supreme Court noted that the district court's ruling was predicated on *MacDonald*, and quoted the district court as stating "'it would be ludicrous to think that you could search the car and not the

15

people' if an officer smelled a strong odor of marijuana emanating from the passenger compartment of the vehicle." *Fewell*, 286 Kan. at 374.

On appeal, our court was divided regarding the constitutionality of the warrantless search and seizure. Writing for the majority which upheld the district court's denial of Fewell's suppression motion, Judge Steve Hill reasoned:

> "First, the smell of marijuana gave the trooper probable cause to further detain the vehicle, including Fewell as the driver of that vehicle. Second, the odor created the officer's suspicion that marijuana use had been committed and that such evidence might be found on the driver, especially since the odor was burnt, compared to fresh, and that Fewell admitted that his passenger had smoked a blunt. Here, the trooper was experienced in detecting marijuana odor through his 11 years of law enforcement experience. Consequently, under the circumstances of this case, there was probable cause to search the driver based on the detection of burnt marijuana odor emanating from the vehicle." *State v. Fewell*, 37 Kan. App. 2d 283, 288, 152 P.3d 1249 (2007).

In dissent, Judge Richard Greene characterized the issue as "a close and difficult question," *Fewell*, 37 Kan. App. 2d at 294, but he concluded there was insufficient probable cause because the results of the on-scene investigation which occurred prior to the search of Fewell *lessened* the suspicion that Fewell possessed illegal drugs. In particular, as summarized by the Supreme Court, Judge Greene noted the absence of the odor of marijuana about Fewell, that Fewell implicated Brown in smoking the marijuana, Brown's later admission to smoking marijuana, and the discovery of marijuana on Brown after he denied possessing it. All of these circumstances developed during the on-scene investigation, which in Judge Greene's estimation, reduced the likelihood of probable cause that Fewell had engaged in the illegal use or possession of marijuana. As a consequence, Judge Greene found that Fewell's rights under the Fourth Amendment were violated.

Prior to its analysis, our Supreme Court carefully and explicitly framed the search and seizure question:

> "Fewell points out that no published Kansas case to date has held that odor of marijuana alone provides probable cause to search the occupants of a vehicle, and he argues that the facts in this case do not support such a finding. *We emphasize that the issue in this case is not whether the odor of burnt marijuana alone provided probable cause to search the defendant, but rather whether under the totality of circumstances probable cause existed for the search of defendant's person.*" (Emphasis added.) 286 Kan. at 375.

In considering the totality of circumstances known to Officer Engholm prior to his warrantless search of Fewell, the Supreme Court highlighted the following facts:

- The strong odor of burnt marijuana indicating that "someone inside the vehicle had very recently engaged in criminal activity." 286 Kan. at 382.
- Fewell's initial denial of the smell of burnt marijuana and his later admission to the smell as he identified Brown as the offender smoking in the vehicle.
- Brown's statement that he had smoked all of the marijuana in his possession although the subsequent search of Brown revealed baggies of marijuana.

In affirming the district court and our court's view that the warrantless search of Fewell was based on probable cause, the Supreme Court concluded:

> "While presenting a close case, we find that the totality of circumstances—the odor of burnt marijuana coming from the enclosed passenger compartment of Fewell's vehicle, as well as Fewell's initial and final responses to Engholm's inquiries and Brown's response to the officer—provided Engholm with a particularized suspicion that Fewell may have been engaging in illegal activity." 286 Kan. at 383.

17

It is well established that our court is duty bound to follow Kansas Supreme Court precedent unless we discern some indication the Supreme Court is departing from its prior precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We are unaware of any suggestion that since its opinion in *Fewell*, our Supreme Court has embraced the notion that the plain smell or odor of marijuana alone is sufficient for a probable cause finding that justifies a warrantless search of an individual with exigent circumstances.

Moreover, both before and after *Fewell*, our court has embraced the belief that the totality of circumstances—not simply the odor of marijuana alone—should be considered in evaluating the existence of probable cause. See *State v. Thomas*, 28 Kan. App. 2d 70, 74, 12 P.3d 420 (2000) ("[T]he odor of marijuana on a person in custody, coupled with the detention facility's recognized security interest in preventing the introduction of such contraband within its walls, is sufficient to establish probable cause to strip search the person in question."); *State v. Smith*, No. 103,736, 2011 WL 4563077, at *4 (Kan. App. 2011) (unpublished opinion) (No finding of probable cause to search the defendant who had an odor of marijuana about him, was nervous, his vehicle had an odor of a possible masking agent, and the defendant possessed $370.); *State v. Crites*, No. 103,201, 2010 WL 5490737, at *6 (Kan. App. 2010) (unpublished opinion) (Probable cause existed to search the passenger where there was strong odor of marijuana from the passenger side of a vehicle and the driver said that he suspected the passenger was the cause.); *State v. Baeza*, No. 101,489, 2010 WL 348284, at *3 (Kan. App. 2010) (unpublished opinion) (Probable cause established based on an odor of marijuana and the suspect's bloodshot eyes.).

Accordingly, we will apply the law from *Fewell* to the unique facts of this case, mindful of the Supreme Court's admonition, that "probable cause is a determination based upon the totality of circumstances. We therefore look to the circumstances of this case to resolve the issue of probable cause, recognizing that *the smell of burnt marijuana by an*

18

*experienced law enforcement officer is a significant circumstance to be considered*." (Emphasis added.) 286 Kan. at 379. We will individually discuss each circumstance relevant to the finding of probable cause.

One of the most unique, incriminating, and important aspects of this case was Officer Russell's testimony that the odor of marijuana "smelled like someone was smoking marijuana when they drove past us, and as we were following the vehicle, it smelled like marijuana was coming from the vehicle, like they were smoking marijuana in the vehicle." Similarly, Officer Moore described the odor as "pretty recent. The burned marijuana smell, it's recent, is very fresh."

Unlike typical search and seizure cases involving the odor of raw or burnt marijuana, Officer Russell's testimony was categorical that he believed one or more occupants in the Pontiac was actively smoking marijuana as the Pontiac passed the officer's patrol vehicle and during the subsequent pursuit. Based on Officer Russell's testimony, the odor of burning marijuana meant that the offense of possession of marijuana was being committed in his presence when he encountered Hadley and Love traveling on North Minnesota Street.

In this regard, the amount, strength, and continuous duration of the odor of burning marijuana is important. Both officers noticed the odor as the Pontiac passed the patrol vehicle and they continued to smell the odor as Officer Russell made a U-turn and pursued the Pontiac. Although both officers were seated some distance from the Pontiac traveling down the street, they described the odor as "strong." These characteristics bolstered Officer Russell's opinion at the time of the encounter that marijuana was actively burning inside the Pontiac. Of course, Officer Russell's opinion was also corroborated by Hadley who, during the suppression hearing, admitted smoking marijuana in the car just prior to the traffic stop. Additionally, after the pursuit and traffic

stop, both officers continued to detect the very strong odor of burned marijuana as each one stood on either side of the Pontiac.

In summary, this was not a situation wherein a vehicle may have contained the residual scent of marijuana burned by some unknown individual in the vehicle at some earlier, unknown time and location. There was substantial evidence based on the two officers' testimony that Hadley and/or Love were actively smoking a quantity of marijuana from the time the officers first encountered the vehicle until the traffic stop.

A second important circumstance in this case is that the odor of marijuana was not simply detected coming from the passenger compartment of the Pontiac but also from Hadley personally. Although Officer Moore noticed an "overall odor" of marijuana about Love, he could not testify whether this odor came from Love personally. On the other hand, Officer Russell explained that he "could smell marijuana coming from [Hadley], both occupants from the car, and from the car." Given this uncontroverted testimony, it is apparent that Officer Russell associated the odor of burning and burnt marijuana not just emanating from the passenger compartment of the Pontiac, but with the burnt odor coming from Hadley and Love individually. Officer Russell's detection of the odor coming from Hadley is especially telling because the officer had primary contact with her during the on-scene investigation. Attributing the odor of burnt marijuana to Hadley and Love individually suggests they were smoking marijuana just prior to the traffic stop and they were, therefore, likely to have personally possessed the drug at that time.

We pause to highlight, as the Supreme Court emphasized in *Fewell*, the significance of an officer's recognition of the odor of marijuana is only as good as the officer's knowledge and experience in detecting the drug. 286 Kan. at 383. At the time of trial, Officer Moore was a five-year veteran of the Wichita Police Department assigned to the investigations division as a gang intelligence offer. At the time of the traffic stop, Officer Moore had been trained in the law enforcement academy to identify marijuana,

20

"detect the different smell of raw marijuana versus burned marijuana," in addition to coming into contact with the drug during his years of service as a law enforcement officer.

At the time of the traffic stop and at the time of trial, Officer Russell was assigned to the Specialized Community Action Team, the Wichita Police Department's drug and gang team and violent crime task force. During his five years in this capacity he had been trained and was experienced in the detection of the odor of marijuana.

Similar to *Fewell*, on appeal, Hadley does not challenge the officers' experience or ability to recognize the distinctive odor of raw, burning, or burnt marijuana. On the other hand, there is substantial competent evidence that both officers had sufficient familiarity with the drug to accurately detect its distinctive odors.

There is a third circumstance that, in addition to the odor of marijuana, is significant in the assessment of probable cause in this case. That circumstance is the on-scene investigation which developed evidence that Hadley personally possessed the marijuana. Kansas cases have established that an officer's on-scene drug investigation (typically following an ordinary traffic stop) may provide important evidence to either support a finding of probable cause to search for drugs or diminish the initial suspicion of probable cause. See *State v. Anderson*, 281 Kan. 896, 904, 136 P.3d 406 (2006) (After traffic stop and search of truck did not reveal illegal drugs, the reasonable suspicion of suspected drug activity had lessened since there was no incriminating evidence that the defendant was linked to drugs found on the other occupant of the truck.); *Fewell*, 37 Kan. App. 2d at 297 (Greene J., dissenting) ("Here, the investigation resulted in *lessening* any suspicion that Fewell was involved in criminal activity.").

In the present case, upon stopping the Pontiac and engaging the occupants, the officers began to investigate the whereabouts of the marijuana. For his part, Officer

Moore conducted a pat-down search of Love "to determine if there was any marijuana on that person, and that is where the odor could have been coming from." No marijuana was found on Love. After Hadley stepped out of the Pontiac, Officer Russell then searched the vehicle's passenger compartment in an effort to locate the marijuana. Once again, no marijuana was found. Only *after* the search of Love and the Pontiac's interior revealed no marijuana did Officer Larison search the only place associated with the smell of burning or burnt marijuana where the drug could have been located but had not been searched— the person of Hadley.

In her appellant's brief, Hadley acknowledges this investigative chronology:

"The testimony of all the State's witnesses clearly demonstrates that the pat down of [Hadley] was to search for marijuana based solely on the odor of marijuana coming from the vehicle and due to the fact that no drugs were found in the vehicle or on the passenger. The defendant was the last place for the officers to check for drugs."

Similarly, as the State views it, Hadley "was not patted down until *after* other logical hiding spots for the marijuana had been eliminated. In this regard, the circumstances of the traffic stop actually increased the officers' suspicion that [Hadley] herself was involved in illegal activity, i.e., the possession and/or use of marijuana." In summary, by the officers' methodical way of investigating, the other potential locations for finding the marijuana were eliminated which only increased the officers' reasonable belief in the fair probability that Hadley possessed the drugs.

There is a fourth circumstance that supports a reasonable officer's belief there was probable cause that Hadley possessed marijuana. In the present case, Officer Russell and Officer Moore testified that Hadley failed to dim the vehicle's headlights upon approaching the patrol vehicle on a city street. This unsafe driving behavior continued as

22

Officer Russell flashed his headlights and even shined his spotlight on the oncoming Pontiac in a failed effort to alert Hadley to this illegal driving behavior.

"Obviously, evidence of unsafe driving can suggest intoxication." *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015). Relevant to marijuana usage and unsafe driving, one court recently explained:

> "Unlike alcohol, marijuana does not act as a general central nervous system depressant, impairing functions throughout the body. Nonetheless, the primary psychoactive substance in marijuana, tetrahydrocannibol (THC), is known to have an impact on several functions of the brain that are relevant to driving ability, including the capacity to divide one's attention and focus on several things at the same time, balance, and the speed of processing information. While not all researchers agree, a significant amount of research has shown that consumption of marijuana can impair the ability to drive." *Commonwealth v. Gerhardt*, 477 Mass. 775, 780-81, 81 N.E.3d 751 (2017).

See also *Parish v. State*, 176 So. 3d 781, 786 (Miss. 2015) (noting that the defendant's blood test "revealed the presence of active metabolites for marijuana, meaning he was still experiencing the pharmacological effects of the drug even after he was arrested").

Hadley's failure to dim her headlights after being repeatedly alerted by an officer in a marked patrol vehicle, contemporaneously with the strong odor of burning marijuana coming from her car, and her admission to smoking marijuana and being under the influence of the drug shortly before the traffic stop, leads to a fair inference that Hadley's inattentiveness and unsafe driving was related to the effects of her smoking marijuana while in the vehicle. Moreover, Hadley's smoking of marijuana increased the likelihood that she also possessed a quantity of it at the time.

Under the totality of circumstances present in this probable cause with exigent circumstances warrantless search—including the very strong odor of burning and burnt

23

marijuana detected by experienced law enforcement officers emanating from the passenger compartment of the vehicle in which Hadley was driving; the smell of burnt marijuana coming from Hadley personally; the fact that prior to the search of Hadley all other places for the marijuana to be located had been searched without finding the drug; and Hadley's failure to dim her vehicle's headlights upon repeatedly being alerted by officers to her unsafe driving, which suggested inattentiveness due to the effects of smoking marijuana—we conclude the officers had knowledge, based on trustworthy information, to warrant a person of reasonable caution in the belief that the offense of possession of marijuana was being committed, and a reasonable belief in the fair probability that Hadley personally possessed the marijuana.

Finally, we find guidance in *Fewell*'s admonition: "Probable cause is not an exact science, but rather is based on the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *Fewell*, 286 Kan. 370, Syl. ¶ 6. In evaluating the totality of the circumstances of this case, including the smell of burning or burnt marijuana by experienced police officers which is a significant circumstance to be considered, we hold the district court did not err in ruling that the warrantless search of Hadley was based on probable cause with exigent circumstances.

Affirmed.